20825

Delmar JENKINSON, Appellant. v. MURROW BROTHERS SEED
COMPANY, INC., Respondent, and Causey Grain Company, Inc.,
and Gurley's, Inc., Appellants.

(249 S. E. (2d) 780)

*Howard E. Manning, Jr.,* of Manning, *Fulton & Skinner,* Raleigh, N. C., *for appellant Gurley's Inc.*

*William C. Anderson, Jr.,* Hampton, *for appellant Causey Grain Co., Inc.*

*William C. Coffey, Jr.,* of *Coffey & Cooper,* Manning, *for respondent.*

November 29, 1978.

LITTLEJOHN, Justice:

Plaintiff Delmar Jenkinson is the ultimate consumer of soybean seed produced and certified by the defendant Murrow Brothers, a Georgia corporation. Jenkinson sued Murrow and others in South Carolina, alleging defective seed. The only issue on this appeal from the order of the circuit judge, dismissing the action as to Murrow, is whether Murrow has submitted itself to the jurisdiction of the South Carolina courts either by (1) doing business in this state so as to come within the orbit of South Carolina's "long arm statute," or by (2) appearing generally in this action.

The complaint alleges that Jenkinson bought from defendant Gurley's, Inc., a North Carolina corporation, a large quantity of seed, delivery to be made at the business of defendant Causey Grain Company in Furman, S. C. Gurley's filled the order by having Murrow deliver the seed to Causey for transfer to Jenkinson, the purchaser. Murrow attached to the seed a certification that 98% of the seed would germinate. Jenkinson brought this action in South Carolina against Murrow, Causey and Gurley's, alleging breach of this warranty and negligence. The complaint alleges that Murrow ". . . is authorized to and does transact business in the County of Clarendon, State of South Carolina; . . ."

Murrow moved to dismiss the suit as to it for lack of jurisdiction, on the ground that it ". . . is a corporation organized and existing solely under the laws of the State of Georgia, is not and has not engaged in business in the State of South Carolina, and has no agent

in the State of South Carolina, and that as a foreign corporation it has not been properly served with a summons and complaint. . . ."

In support of the motion Murrow supplies only one affidavit, of its president, stating:

"1. That Murrow Brothers Seed Company, Inc., is a corporation duly organized and existing under the laws of the State of Georgia, having its principal place of business in Farmington, Georgia.

"2. That the Defendant Murrow Brothers Seed Company, Inc., has no offices, agents or other business located in the State of South Carolina.

"3. That the Defendant Murrow Brothers Seed Company, Inc., has engaged in no business relations with the Plaintiff in the above captioned case in South Carolina or otherwise."

Although relevant, the averments of paragraphs 1 and 2 would not *ipso facto* prevent trial in South Carolina. The averment of paragraph 3 merely says that Murrow has ". . . engaged in no business relations with the Plaintiff in the above captioned case in South Carolina or otherwise." The question we are called upon to determine is whether this affidavit overcomes the allegation of the complaint, which is normally sufficient to warrant the court's exercise of jurisdiction. Jurisdiction is predicated upon the South Carolina "long arm statute," § 36-2-803(1)(h), *Code of Laws of South Carolina* (1976). That section reads in part as follows:

"Personal jurisdiction based upon conduct.

"(1) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's

.  .  .  .  .

"(h) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be

used or consumed in this State and are so used or consumed."

It is inferable from the complaint that Murrow certified the seed and shipped them to South Carolina ". . . with the reasonable expectation that those goods are to be used or consumed in this State . . .", and that they were so used. Accordingly, the activity of the defendant comes within the provision of the statute, and jurisdiction exists unless the assumption of jurisdiction would violate due process.

The test for jurisdiction on the due process issue is whether the subjection to jurisdiction would offend traditional notions of fair play and substantial justice. Whether due process is satisfied depends upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. In *McGee v. International Life Ins. Co.,* 355 U. S. 220, 78 S. Ct. 199, 2 L. Ed. (2d) 223 (1957), the United States Supreme Court held that a single contract was sufficient to satisfy due process. In *Ross v. American Income Life Ins. Co.,* 232 S. C. 433, 102 S. E. (2d) 743 (1958), this court held that a single insurance policy mailed to an individual in this state was a sufficient contact to warrant the exercise of jurisdiction without violating the due process clause. We have repeatedly held that the drafters of our "long arm statute" intended it to reach as far as due process allows. *Triplett v. R. M. Wade & Co.,* 261 S. C. 419, 200 S. E. (2d) 375 (1975), and cases cited therein. The facts before us are not that of a manufacturer or distributor selling products which by some wholly fortuitous happening, or which after following a circuitous uncharted course through the channels of interstate commerce, arrived in South Carolina. To the contrary, it is inferable that Murrow had actual knowledge that these particular soybeans, expressly and impliedly warranted by it, were to be used or consumed in this state, and it placed the beans into the stream of commerce in South Carolina. Murrow has enjoyed the benefits of the South Carolina market and

profited from the sale of its products in this state. *Duple Motor Bodies, Ltd. v. Hollingsworth,* 9 Cir., 417 F. (2d) 231 (1969). The relevant portion of Murrow's affidavit does not aver that it does not do business in South Carolina but only that it has ". . . no business relations with the Plaintiff . . . in South Carolina or otherwise."

In *Boney v. Trans-State Dredging Co.,* 237 S. C. 54, 115 S. E. (2d) 508 (1960), we said:

"No universal formula has been, or is likely to be, devised for determining what constitutes 'doing business' by a foreign corporation within a state in such sense as to subject it to the jurisdiction of the courts of that state. The question must be resolved upon the facts of the particular case." [Citations omitted.]

We pointed out, however, that certain considerations are of help in the solution of the problem in most cases and said: "Among them are the duration of the corporate activity in the state of the forum; the character of the acts giving rise to the suit, and the circumstances of their commission; and the balancing of the inconvenience to the parties, respectively, of a trial in that state on the one hand and in the state of the corporate domicile on the other."

The damages which Jenkinson is alleged to have suffered grow out of the combined business activity of three corporations. One is home-based in North Carolina, the second home-based in Georgia, and the third home-based in South Carolina. Ostensibly all of these corporations are culpable, and the damages may be, in the last analysis, attributable to the conduct of each. The balance of convenience of the two possible forums argues for a trial in South Carolina. If Jenkinson is forced to sue Murrow in Georgia and the other two defendants in South Carolina, "the defendant(s) in each case may be able to avoid liability for [the] condition by pointing the finger at the absent defendant(s)." *Buckeye Boiler Co. v. Sup. Ct. of Los Angeles County,* 71 Cal. (2d) 893, 80 Cal. Rptr. 113, 123,

458 P. (2d) 57, 67 (1969). Under the facts of this case it can hardly be said that traditional notions of fair play and substantial justice are offended by requiring these three corporations to defend in the same action.

Since we conclude that Murrow may be sued in South Carolina by reason of our "long arm statute," we do not reach the question of whether the defendant, by requesting an extension of time in which to answer, has appeared generally.

Reversed.

LEWIS, C. J., and RHODES and GREGORY, JJ., concur.

NESS, J., concurs in result.

NESS, Justice (concurring):

I concur in the result of the majority; however, I would reverse on a different theory.

I believe Murrow Brothers waived its right to object to jurisdiction when it requested and received an extension of time to answer. The following letter was written by counsel for Murrow to Jenkinson:

"We have been contacted by an attorney in Georgia concerning a Complaint you mailed to Murrow Bros. Seed Company on behalf of Delmar Jenkinson. I am currently waiting to be briefed on the facts of the case as far as Murrow Bros. is concerned and called your office on Tuesday to request an extension.

"Nelson Parker authorized an extension in which to answer or otherwise plead and I told him that I would send you a letter to confirm this. Therefore, if you would be so kind as to grant us this extension on the bottom of this letter we will be in touch with you in the near future." (Tr. p. 11).

The general rule is that "an agreement or stipulation extending time to plead constitutes a general appearance." 5 Am. Jur. (2d), Appearance, § 25, p. 499. The rationale

behind this rule is that a request for an extension of time to plead impliedly indicates an intent to submit to jurisdiction.

It is unnecessary that the act acknowledging jurisdiction be formal in nature. As stated in Lightsey, Code Pleading, p. 32:

"[A] voluntary appearance waiving a jurisdictional defect may be based on far less than the formal filing of an answer or submission to the Court. For example, requests for extensions of time . . . may involve the sanctions of Section 10-406.1."

In order to establish a waiver of the right to contest jurisdiction, it is only necessary that a party, by its conduct, evince an intent to proceed to the merits of the case. Such intent may be gleaned by the inconsistency arising when a party initially acknowledges jurisdiction and subsequently attempts to deny it. In *Connell v. Connell*, 249 S. C. 162, 166, 153 S. E. (2d) 396, 398 (1967), the Court stated:

"[I]f a defendant, by his appearance, insists only on objection that he is not in court for want of jurisdiction over his person, and confines his appearance for that purpose only, then he has made a special appearance, *but if he raises any other question or asks any relief which can only be granted on the hypothesis that the court has jurisdiction of his person, then he has made a general appearance.*" (Emphasis supplied).

See also *South Carolina State Highway Dept. v. Isthmian S. S. Co.,* 210 S. C. 408, 43 S. E. (2d) 132 (1947).

The fact that Murrow Brothers took advantage of the extension granted prior to contesting jurisdiction amplifies the inconsistency created by its conduct, and distinguishes this case from *Thompson v. Queen City Coach Co., Inc.,* 169 S. C. 231, 168 S. E. 693 (1933). There, although an extension of time was requested, the defendant did not use the extra time, but timely filed a notice of special appearance.

I would hold that Murrow Brothers waived its right to assert a lack of jurisdiction and would not reach the issue on which the majority bases its opinion.