644 S.E.2d 793

STEARNS BANK NATIONAL ASSOCIATION, Plaintiff,

v.

GLENWOOD FALLS, LP, a South Carolina limited partnership; DC Development, Inc.; McBride Building Supplies & Hardware, Inc.; First Federal Savings and Loan Association of Charleston; Charleston Affordable Housing, Inc.; and the Building Center, Inc., Defendants,

Of whom DC Development, Inc., is the Respondent,

v.

and Glenwood Falls, LP, a South Carolina limited partnership, is the Appellant.

No. 4231.

Court of Appeals of South Carolina.

Heard March 6, 2007.
Decided April 9, 2007.
Rehearing Denied May 17, 2007.

332

334

Michael W. Tighe and Mary Dameron Milliken, of Columbia, for Appellant.

William E. Booth, III, of West Columbia, for Respondent.

KITTREDGE, J.:

Glenwood Falls, LP, appeals the master's order denying its motion to set aside a default judgment. We affirm.

## I.

Glenwood Falls is a South Carolina limited partnership. Glenwood Falls hired DC Development, a South Carolina corporation, to construct apartments on real property Glenwood Falls owned in York County. To fund this project,

Glenwood Falls obtained a $1.8 million mortgage from Stearns Bank.

On January 30, 2004, Stearns Bank brought a foreclosure action against Glenwood Falls, DC Development, and Charleston Affordable Housing ("Affordable Housing"). Affordable Housing, a South Carolina non-profit corporation, is one of Glenwood Falls' general partners. On March 15, 2004, DC Development answered and filed a cross-claim against Glenwood Falls, seeking to foreclose a mechanic's lien on the property and asserting causes of action for breach of contract, unjust enrichment, and quantum meruit. DC Development's attorney, William Booth, mailed the cross-claim via certified mail to Glenwood Falls' registered agent, Cathy Kleiman, but Kleiman did not sign the return receipt. Instead, an unauthorized person signed it.

Kleiman nevertheless received the cross-claim and, on May 13, 2004, forwarded it to Robert Nettles, an attorney she believed represented Glenwood Falls. Over the next several months, Kleiman attempted to contact Nettles multiple times to ascertain the status of the cross-claim, but Nettles did not respond. The record does not establish that Nettles was ever retained to represent Glenwood Falls in this matter.

On June 17, 2004, the master issued a foreclosure order, but retained jurisdiction to hear the cross-claim. On July 28, 2004, DC Development's attorney, Booth, purportedly received a phone message from Affordable Housing's attorney, Frank Cisa, regarding Cisa's representation of Glenwood Falls. On November 8, 2004, Booth wrote Cisa the following:

I represent DC Development, Inc. and I believe you represent Glenwood Falls, LP and Charleston Affordable Housing, Inc. I have scheduled the trial of a Cross–Claim of DC Development, Inc. against Glenwood Falls, LP. The trial is scheduled for December 16, 2004, at 1:30 PM in the office of the Master in Equity for York County.

Cisa replied the next day ("the November 9 letter"). He wrote:

I do represent Charleston Affordable Housing, Inc. and I am now taking over the representation of Glenwood Falls, LP. What I gather from you[r] letter is that no Answer was filed on behalf of Glenwood Falls, LP to the Cross–Claim of

DC Development, Inc. If that is the case, it was caused by the failure of the original attorney for Glenwood Falls, LP to respond. In any event, for DC Development, Inc. to recover any money in this action, my opinion is that Glenwood Falls, LP needs to assert a claim over and against the architects and engineers who designed this project. Glenwood Falls, LP has no assets. . . .

On December 16, 2004, the master heard DC Development's cross-claim against Glenwood Falls, as Booth mentioned in his letter to Cisa. Cisa, however, did not appear on Glenwood Falls' behalf. That same day, Booth filed an affidavit of default. On January 5, 2005, the master entered a default judgment of $1.3 million against Glenwood Falls.

In April 2005, Glenwood Falls moved to set aside the default judgment. Glenwood Falls argued (1) the judgment was void because the court did not have personal jurisdiction over Glenwood Falls as a result of DC Development's failure to properly serve Glenwood Falls, and (2) the judgment was procured through excusable neglect. The master denied Glenwood Falls' motion. The master found (1) the court had personal jurisdiction over Glenwood Falls, despite DC Development's failure to serve Glenwood Falls properly, because Glenwood Falls made a voluntary appearance, which waived its right to contest personal jurisdiction, and (2) the judgment was not procured through excusable neglect. Glenwood Falls appeals.

## II.

The decision to grant or deny a motion for relief from judgment lies within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *BB & T v. Taylor*, 369 S.C. 548, 551, 633 S.E.2d 501, 502–03 (2006). "An abuse of discretion arises where the judge issuing the order was controlled by an error of law or where the order is based on factual conclusions that are without evidentiary support." *Id.* at 551, 633 S.E.2d at 503.

## III.

Glenwood Falls argues the master erred in denying its motion to set aside a default judgment because (1) the judgment was void, as Glenwood Falls was not properly served and

did not make a voluntary appearance, and (2) the judgment was procured through excusable neglect, as Glenwood Falls' attorneys abandoned it. We find no abuse of discretion in the denial of Glenwood Falls' motion for relief from default judgment.[1]

## A. Voluntary Appearance

Glenwood Falls contends the judgment was void as a result of DC Development's improper service, and the master erred in finding Glenwood Falls made a voluntary appearance. We disagree.

■ A court may set aside a default judgment in accordance with Rule 60(b), SCRCP. *See* Rule 55(c), SCRCP. Rule 60(b)(4) provides: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment ... [if] the judgment is void...." "A judgment is void if a court acts without personal jurisdiction." *BB & T v. Taylor,* 369 S.C. 548, 551, 633 S.E.2d 501, 503 (2006).

A court usually obtains personal jurisdiction by the service of the summons and complaint. To serve a partnership, a copy of the summons and complaint must be delivered to "an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process," or sent by "registered or certified mail, return receipt requested and delivery restricted to the addressee." Rule 4(d)(3) & (8), SCRCP. Although a court commonly obtains personal jurisdiction by the service of the summons and complaint, it may also obtain personal jurisdiction if the defendant makes a voluntary appearance. Rule 4(d) ("Voluntary appearance by defendant is equivalent to personal service.").[2]

---

1. The amended Rule 60(b), SCRCP, motion that is the basis of this appeal is generic and unspecific, leaving us to speculate as to the precise basis of the motion. Beyond this, the record on appeal does not contain the transcript from the motion hearing. Although we could affirm on issue preservation grounds alone, we elect to treat the issue as preserved, for we can reasonably discern the basis of the motion in the master's order denying the motion.

2. Although Rule 5(b), SCRCP, generally provides less stringent standards for serving pleadings subsequent to the original summons and

■ As the master found, and neither party contests, DC Development did not properly serve Glenwood Falls under Rule 4(d)(8), because an unauthorized person signed the return receipt. Normally, this would be a suitable ground to grant relief from judgment under Rule 60(b)(4). *See* Rule 4(d)(8) ("Any such default or judgment by default shall be set aside pursuant to Rule 55(c) or Rule 60(b) if the defendant demonstrates to the court that the return receipt was signed by an unauthorized person."). But the master did not set aside the default judgment under Rule 60(b)(4) because he found Glenwood Falls made a voluntary appearance, which under Rule 4(d) is "equivalent to personal service." Thus, the master concluded the court had personal jurisdiction over Glenwood Falls.

■ The critical issue, therefore, is whether the master erred in finding Glenwood Falls made a voluntary appearance. "The term 'appearance' is used particularly to signify or designate the overt act by which one against whom suit has been commenced submits himself to the court's jurisdiction." 4 Am.Jur.2d *Appearance* § 1 (1995). "An appearance may be expressly made by formal written or oral declaration, or record entry, or it may be implied from some act done with the intention of appearing and submitting to the court's jurisdiction." *Id.* No specific act constitutes an appearance, as "a defendant may choose to come into court with trumpets, or quietly by the back door." *Stephens v. Ringling*, 102 S.C. 333, 342, 86 S.E. 683, 685 (1915). Accordingly, courts decide on a case by case basis whether a defendant's act demonstrates an intent to submit to the court's jurisdiction.

Here, the master found the November 9 letter from Glenwood Falls' attorney, Cisa, to DC Development's attorney demonstrated an intent to submit to the court's jurisdiction and, therefore, constituted a voluntary appearance. The master cited *Petty v. Weyerhaeuser Company*, 272 S.C. 282, 251 S.E.2d 735 (1979), for the proposition that a letter from one attorney to another may constitute a voluntary appearance. Glenwood Falls argues *Petty* is distinguishable from this case.

complaint, Rule 5(a), SCRCP, requires service pursuant to Rule 4 when a party makes new or additional claims against another party that has been held in default for failure to appear.

In *Petty*, plaintiff's counsel sent the summons and complaint to defense counsel in Tacoma, Washington. A few weeks later, defense counsel called plaintiff's counsel to request an extension of time to answer the complaint, which plaintiff's counsel granted. Defense counsel memorialized this exchange in a letter to plaintiff's counsel, which read: "Confirming our telephone conversation of February 27, please consider this letter as an informal notice of appearance on behalf of [the defendant] in the suit you recently instituted...." *Id.* at 284, 251 S.E.2d at 736. The letter also stated the defendant would like to "explore settlement possibilities prior to retaining counsel in South Carolina for formal appearance, answer and defense or settlement by local counsel." *Id.* When, after numerous attempts, plaintiff's counsel could not reach defense counsel to discuss settlement possibilities, plaintiff's counsel filed an affidavit of default, and an order of default was issued. Defense counsel moved to set aside the order of default, arguing the court did not have personal jurisdiction over the defendant because the plaintiff improperly served it. The trial court found service was proper and, even if service were improper, the defendant made a voluntary appearance. Our supreme court found service was improper, but nevertheless held the defendant made a voluntary appearance.

Glenwood Falls asserts *Petty* is distinguishable from this case because (1) in *Petty* defense counsel acknowledged the summons and complaint, but in this case Cisa did not acknowledge the cross-claim; and (2) in *Petty* defense counsel expressly stated the letter should be considered an appearance, but in this case Cisa did not expressly state the November 9 letter should be considered an appearance.

Glenwood Falls' attempt to distinguish *Petty* is unpersuasive. First, Cisa *does* acknowledge DC Development's cross-claim. In the November 9 letter to Booth, Cisa writes, "What I gather from you[r] letter is that no Answer was filed on behalf of Glenwood Falls, LP *to the Cross–Claim* of DC Development, Inc." (emphasis added).[3] Clearly, then, Cisa

---

3. Glenwood Falls emphasizes in its brief to this court that the November 9 letter does not even mention the cross-claim. Glenwood Falls writes Cisa "simply stated that he was 'now taking over the representation of Glenwood Falls, LP' *without even mentioning the Cross–Claim.*"

recognized DC Development's cross-claim against Glenwood Falls.

Second, the mere fact that Cisa did not mention the word "appearance" in the November 9 letter does not mean Glenwood Falls failed to make an appearance. Again, the inquiry is whether Glenwood Falls' conduct demonstrated an intent to submit to the court's jurisdiction. The inquiry is *not* whether Glenwood Falls invoked the term "appearance." [4] On many occasions our supreme court has found that a party can make a voluntary appearance without formally announcing it. *See, e.g., Triangle Auto Spring Co. v. Gromlovitz*, 270 S.C. 386, 389–90 n. 1, 242 S.E.2d 430, 431 n. 1 (1978) (holding that consenting to a confession of judgment constitutes a voluntary appearance); *Connell v. Connell*, 249 S.C. 162, 167, 153 S.E.2d 396, 399 (1967) (holding that raising the defense of res judicata constitutes a voluntary appearance); *Southeastern Equip. Co. v. One 1954 Autocar Diesel Tractor*, 234 S.C. 213, 218, 107 S.E.2d 340, 342 (1959) (holding that filing a motion to set aside an attachment constitutes a voluntary appearance).

As the master correctly held that a letter from one attorney to another may serve as a basis to find a voluntary appearance, we now examine whether the master erred in finding that Glenwood Falls made a voluntary appearance. We be-

---

(emphasis added). Glenwood Falls' claim is not accurate, for the November 9 letter clearly addresses the cross-claim.

**4.** Glenwood Falls argues that because the November 9 letter did not formally announce Glenwood Falls' intent to make an appearance, Glenwood Falls did not waive its right to contest personal jurisdiction. Glenwood Falls cites *Boland v. South Carolina Public Service Authority*, 281 S.C. 293, 315 S.E.2d 143 (Ct.App.1984), for the proposition that a letter from defense counsel to plaintiff's counsel does not constitute a voluntary appearance if the letter does not expressly invoke the term "appearance." *Boland* does not create such a bright-line rule. In *Boland*, this court upheld the trial court's finding that the communication from defense counsel to plaintiff's counsel did not constitute an appearance. That the communication did not use the term appearance was only one fact, among many, that was considered in the decision. Other relevant factors included, for example, the timing and level of communication between the attorneys, as well as the fact that the defendant's "next move in [the] lawsuit following [defense counsel's] letter was to make a special appearance. . . ." *Id.* at 297, 315 S.E.2d at 146. It is thus incorrect to suggest that the holding in *Boland* turned merely on the absence of the term "appearance" in the letter.

lieve the November 9 letter manifests Glenwood Falls' intent to submit to the jurisdiction of the court. In the November 9 letter, Cisa not only announces his representation of Glenwood Falls without reservation but also expresses an intent to reach the merits of the case, especially when he writes "for DC Development, Inc., to recover any money in this action, my opinion is that Glenwood Falls, LP needs to assert a claim over and against the architects and engineers who designed this project." *See Jenkinson v. Murrow Bros. Seed Co.,* 272 S.C. 148, 154, 249 S.E.2d 780, 783 (1978) (Ness, J., concurring) ("In order to establish waiver of the right to contest jurisdiction, it is only necessary that a party, by its conduct, evince an intent to proceed to the merits of the case."). Moreover, the November 9 letter contains not the slightest hint of a desire to challenge service of process. Based on the record before us, we hold the master did not err in finding the November 9 letter was a voluntary appearance by Glenwood Falls.[5]

## B. Excusable Neglect

Glenwood Falls contends the master erred in finding the judgment was not procured through excusable neglect because Glenwood Falls' attorneys willfully abandoned it. We disagree.

A default judgment may be set aside on the grounds of mistake, inadvertence, surprise, or excusable neglect. Rule 60(b)(1), SCRCP. Relief from judgment is available upon a showing of excusable neglect and a meritorious defense; case law also directs the trial court to consider the presence or absence of prejudice to the party opposing the motion. *Mictronics, Inc. v. S.C. Dep't of Revenue,* 345 S.C. 506, 510–11, 548 S.E.2d 223, 226 (Ct.App.2001) ("In determining whether to grant a motion under Rule 60(b), the trial judge should consider: (1) the promptness with which relief is sought, (2) the reasons for the failure to act promptly, (3) the existence of a meritorious defense, and (4) the prejudice to the other party.").

---

**5.** In light of this holding, we need not address whether Cisa's actions on behalf of Affordable Housing also constituted a voluntary appearance for Glenwood Falls.

■ In the case before us, because of our ultimate disposition, we need only address Glenwood Falls' excusable neglect claim arising from the assertion of willful abandonment by its counsel. Concerning a claim of attorney neglect, the general rule is that "the neglect of the attorney is attributable to the client." *Graham v. Town of Loris*, 272 S.C. 442, 451, 248 S.E.2d 594, 598 (1978). In discussing this general rule, the *Graham* court quoted approvingly from *Simon v. Flowers*, 231 S.C. 545, 551, 99 S.E.2d 391, 394 (1957):

> Although a wide discretion is vested in courts to set aside or vacate judgments because of the neglect, misconduct or inadvertence of counsel employed in the case, the general rule undoubtedly is that the neglect of the attorney is the neglect of the client, and that no mistake, inadvertence or neglect attributable to the attorney can be successfully used as a ground for relief, unless it would have been excusable if attributable to the client. The acts and omissions of the attorney in such case are those of the client.

■ However, "[t]he rule that an attorney's negligence may be imputed to his client and prevent the latter from relying on that ground for opening or vacating a judgment does not necessarily prevail in the event of the attorney's abandonment or withdrawal from the case." *Graham*, 272 S.C. at 452, 248 S.E.2d at 599 (citing 46 Am.Jur.2d *Judgments* § 737 (1969)). To overcome the general rule that the neglect of the attorney is attributable to the client, the client must establish that its former attorney willfully and unilaterally abandoned it. *Id.* at 452, 248 S.E.2d at 599; *Paul Davis Sys. Inc. v. Deepwater of Hilton Head, LLC*, 362 S.C. 220, 226, 607 S.E.2d 358, 361 (Ct.App.2004) ("This is not a case of willful and unilateral abandonment of the client by counsel in which we could refuse to apply the general rule that the neglect of the attorney is the neglect of the client.").

■ Our law thus instructs that an exception to the general rule applies when the attorney's inaction was the consequence of willful abandonment or withdrawal from the case. Where an attorney is merely neglectful, the general rule applies and relief from judgment is unavailable; where an attorney's conduct transcends mere neglect and the party

seeking relief establishes willful abandonment or withdrawal from the case, relief from judgment is available.

The facts in *Graham* are instructive. The Town of Loris was represented by its city attorney. The day before a summary judgment hearing the Town of Loris received a letter from the city attorney announcing his immediate resignation. The city attorney did not inform any town official of the impending summary judgment hearing. When no one appeared at the hearing on behalf of the Town of Loris, summary judgment was entered against it. The trial court ultimately granted the Town of Loris relief from judgment, holding that the Town of Loris had no notice of the summary judgment hearing and that its attorney had resigned. The supreme court affirmed, noting that "under the rare circumstances of this case," the Town of Loris "should not be charged with the abandonment of the case by its counsel." *Graham*, 272 S.C. at 452, 248 S.E.2d at 599.

In *Simon*, 231 S.C. 545, 99 S.E.2d 391, defense counsel failed to answer a complaint because he was involved in a multi-day trial. As a result of defense counsel's failure to answer the complaint, the court entered a default judgment against defendant. On appeal, our supreme court was sympathetic to defense counsel's plight but nevertheless adhered to the general rule and imputed the neglect of counsel to his client. The court explained:

> [T]he default was the result of forgetfulness on [the attorney's] part which in turn was due to pressure of his business in the trial of cases. . . . In the crowded routine of a busy lawyer's life a mistake such as the record here discloses is understandable; but it entails the penalty of default under strict enforcement of the rule of procedure, and the trial court's refusal to forgive it affords no basis for reversal.

*Id.* at 550–51, 99 S.E.2d at 394.

We now turn to Glenwood Falls' claims of excusable neglect in connection with attorneys Nettles and Cisa.

## 1. Nettles

Glenwood Falls argues Nettles willfully abandoned it. We initially observe that it is doubtful whether Nettles actually represented Glenwood Falls in this litigation. In fact, Nettles

wrote Kleiman and Cisa on June 24, 2004, and disavowed any representation of Glenwood Falls. This uncertainty about Nettles' purported representation of Glenwood Falls, standing alone, is enough to sustain the master's ruling.

Moreover, under no circumstance has Glenwood Falls shown that it was prejudiced by Nettles alleged representation. As the November 9 letter illustrates, Glenwood Falls arranged for Cisa to take over the representation of Glenwood Falls before default was entered. Therefore, Glenwood Falls, through Cisa, had ample time following the November 9 letter to take appropriate action to protect itself from default. Glenwood Falls failed to do so. Now, Glenwood Falls attempts to resurrect its alleged problems with Nettles in May, June, and July of 2004 to extricate itself from its failure to act to protect its interests in November and December of 2004. This it cannot do. We find the master did not abuse his discretion in denying Glenwood Falls relief based on the purported representation by Nettles.

## 2. Cisa

Glenwood Falls argues Cisa willfully abandoned it.[6] Cisa began representing Glenwood Falls on November 9, 2004, at the latest. Even if we assume that Cisa's failure to act between the November 9 letter and the default judgment was neglectful, we may not assume that Cisa's failure to act transcends mere neglect and rises to the level of willful abandonment or withdrawal from the case. Resolution of the appeal concerning Cisa turns on this critical difference.

---

6. We question whether this issue was part of Glenwood Falls' Rule 60(b) motion. Glenwood Falls' Rule 60(b) motion is conclusory and while it is clear from the master's order that the Rule 60(b) motion involved attorney Nettles, we are left to speculate about Cisa. The master, for example, in his order denying Rule 60(b) relief focused on Nettles and observed, "The only substantial reason posed for [Glenwood Falls'] failure to act promptly in this matter is alleged 'abandonment' by its original attorney." The master further noted that "Glenwood [Falls] asserts that its first counsel in this matter abandoned it...." Although there is no substantive discussion about Cisa in the master's order, the order does contain indirect references to "either counsel" of Glenwood Falls and the "attorneys" of Glenwood Falls. While a close question is presented, we treat the claim against Cisa as preserved.

As noted, mere neglect invokes the general rule of imputing the neglect of the attorney to the client, while willful abandonment triggers the exception to the general rule and allows relief to the client. This distinction may be best illustrated by reiterating the critical factual distinction between *Simon* and *Graham.* In *Simon,* the attorney simply forgot to answer the complaint against his client, and the supreme court upheld the trial court's denial of relief of judgment because the attorney's conduct did not transcend mere neglect. *Simon,* 231 S.C. at 550–51, 99 S.E.2d at 394. In *Graham,* the moving party established that its attorney affirmatively withdrew by resigning on the eve of a summary judgment hearing leaving the client unaware of the imminent and dispositive motion hearing. Our supreme court upheld the trial court's decision to grant relief from judgment based on the fact that the attorney willfully abandoned his representation by resigning right before the summary judgment hearing. *Graham,* 272 S.C. at 453, 248 S.E.2d at 599.

This case is controlled by *Simon,* for evidence of willful abandonment is missing. Thus, even if we assume Cisa's failure to act following the November 9 letter constituted neglect, the scant record before us does not permit the additional finding of willful abandonment, partly due to Glenwood Falls' generic and nonspecific Rule 60(b) motion. We, of course, decline to speculate in a manner that favors Glenwood Falls. Therefore, Glenwood Falls has not established that Cisa willfully abandoned or withdrew from the case. We find no abuse of discretion in the master's refusal to find excusable neglect.

Consequently, we find no error in the master's denial of Glenwood Falls' Rule 60(b)(1) motion to set aside a default judgment for excusable neglect with respect to attorneys Nettles and Cisa.

## IV.

We hold the master did not abuse his discretion in refusing to set aside the default judgment obtained by DC Development against Glenwood Falls. The November 9 letter constitutes a voluntary appearance by Glenwood Falls, and the

judgment was not procured through excusable neglect. The master's order is

**AFFIRMED.**

SHORT, J., concurs.

ANDERSON, J., dissents in a separate opinion.

ANDERSON, J. (dissenting in a separate opinion):

I disagree with the majority's reasoning and analysis. In my view, the trial court erred in failing to set aside the default judgment on the basis of mistake, inadvertence, surprise, or excusable neglect. Specifically, Glenwood is entitled to relief because its attorneys abandoned it. I **VOTE** to **REVERSE.**

### *ABANDONMENT*

Juridical writing in South Carolina articulates the general rule that the acts and omissions of an attorney are attributable to the client. *Hillman v. Pinion*, 347 S.C. 253, 257, 554 S.E.2d 427, 429 (Ct.App.2001); *Simon v. Flowers*, 231 S.C. 545, 99 S.E.2d 391, 394 (1957). The exception to this rule is recognized in the seminal case, *Graham v. Town of Loris*, 272 S.C. 442, 248 S.E.2d 594 (1978). *Graham* inculcates:

Although a wide discretion is vested in courts to set aside or vacate judgments because of the neglect, misconduct or inadvertence of counsel employed in the case, the general rule undoubtedly is that the neglect of the attorney is the neglect of the client, and that no mistake, inadvertence or neglect attributable to an attorney can be successfully used as a ground for relief, unless it would have been excusable if attributable to the client. The acts and omissions of the attorney in such case are those of the client.

However, under the facts of the present case, we are not merely considering neglect, inadvertence, or mistake of counsel. We are concerned with a wilful and unilateral abandonment of the client by counsel. There is authority for the proposition that the general rule is not applied to such a factual situation. This exception to the general rule is expressed at 46 Am.Jur.2d, *Judgments*, s 737 (1969) in the following language:

The rule that an attorney's negligence may be imputed to his client and prevent the latter from relying on that ground for opening or vacating a judgment does not necessarily prevail in the event of the attorney's abandonment or withdrawal from the case.

272 S.C. 442, 451–52, 248 S.E.2d 594, 599; *accord Paul Davis Systems, Inc. v. Deepwater of Hilton Head, LLC,* 362 S.C. 220, 226, 607 S.E.2d 358, 361 (Ct.App.2004) (recognizing an exception to the general rule when the attorney's conduct constitutes willful abandonment).

The rule that the acts and omissions of an attorney are attributable to the client is not a hard and fast rule. *Brown v. Butler,* 347 S.C. 259, 265, 554 S.E.2d 431, 434 (Ct.App.2001). "Rather, it is one that is 'to be applied rationally, with a fair recognition that justice to the litigants is always the polestar.'" *Id.* (citing *Graham,* 272 S.C. at 452, 248 S.E.2d at 599).

In *Graham,* our Supreme Court held "the attorney's action in withdrawing from this case at a crucial stage without reasonable notice to his client is one of willful abandonment." 272 S.C. at 452, 248 S.E.2d at 599. "An attorney who undertakes the conduct of an action impliedly stipulates to carry it to its termination and is not at liberty to abandon it without reasonable cause and reasonable notice." *Graham,* 272 S.C. at 452–53, 248 S.E.2d at 599 (citing *Perkins v. Sykes,* 233 N.C. 147, 152, 63 S.E.2d 133, 137 (1951)); *Floyd v. Kosko,* 285 S.C. 390, 393, 329 S.E.2d 459, 460 (Ct.App.1985). When counsel withdraws from a case at a crucial stage in litigation without reasonable notice to his client, the "[client] should not be charged with the abandonment of the case by its counsel." *Graham,* 272 S.C. at 452–53, 248 S.E.2d at 599 ("Conscience requires this Court to charge the attorney alone with his gross dereliction of duty and not to visit its consequences upon an innocent client.").

The majority enunciates the position that any failure of counsel must be based upon assumptions. The French phrase "pas du tout"[7] is efficacious. Not only does the failure in this case transcend mere neglect, it rises to the level of abandonment.

---

7. This phrase means "not so" or "not at all".

Kleinman believed Nettles to be Glenwood's attorney when she forwarded DC Development's cross-complaint to him on May 13, 2004. She persisted in attempting to contact Nettles, but he did not respond, nor did he file an answer to the cross-claim. On June 24, 2004, in a letter to Kleinman and Cisa, Nettles disavowed representation of Glenwood. In addition, Cisa's November 9, 2004 letter to counsel for DC Development indicated he was taking over Glenwood's representation. Cisa explained the reason no answer to DC Development's cross-claim had been filed was due to "the failure of the original attorney for Glenwood Falls, LP to respond."

It is commonly understood that a client may assume a lawyer who has previously represented him will continue to serve in that capacity. When the attorney becomes aware the client is operating under that assumption, it is incumbent upon the attorney to immediately and clearly resolve any doubt about whether the attorney-client relationship still exists. Delay in clarifying whether the representation continues risks exposing the client to prejudice, should the client mistakenly believe the attorney is acting to protect the client's interests. Although Nettles had the cross-complaint in his possession and had received multiple contacts from Kleinman, he nevertheless delayed nearly six weeks before addressing the attorney-client relationship. During that time the cross-complaint should have been answered to avoid admission of the allegations therein. Glenwood needed the advice of counsel on how to protect its interests. Glenwood was unquestionably prejudiced by Nettles' conduct.

The etiology of the default position of Glenwood arises from the failure and inaction of Nettles. The default position of Glenwood is concatenated from Nettles through Cisa. On November 8, 2004, Cisa received DC Development's letter informing him of the December 16, 2004 trial date. In acknowledgement of that letter, Cisa confirmed he was taking over Glenwood's representation and indicated he intended to proceed on the merits of the case. Cisa represented Glenwood on November 9, 2004, at the latest. The majority agrees his conduct thereafter was neglectful.

Recognizing the dissimilitude of the facts in *Graham v. Town of Loris* as juxtaposed to this record, the annunciation

of the principles and doctrines of law in *Graham* command the same result in this case. The attorney representing the Town of Loris resigned the day before a summary judgment hearing without notifying the town of his resignation. When no one appeared at the summary judgment hearing the court granted summary judgment against the Town of Loris. In this case, Cisa acknowledged he represented Glenwood, had notice of the December 16 trial, yet simply failed to appear at the trial. Entry of default and the subsequent default judgment against Glenwood resulted from Cisa's abandonment. His failure to appear at this critical stage in litigation without any notice to Glenwood was tantamount to unilateral and willful abandonment. The rationale in *Graham* is equally applicable in this case: "Conscience requires this Court to charge the attorney alone with his gross dereliction of duty and not to visit its consequences upon an innocent client."

## *CONCLUSION*

The opinion of the majority is infected with expository difficulty when juxtaposed to the precedent extant in South Carolina law on abandonment. I **VOTE** to **REVERSE.**