KONDUROS, J.:
**18 Peter J. Wellin, Cynthia W. Plum, and Marjorie W. King (collectively, Appellants) appeal the circuit court's order affirming the probate court's order that required the Wellin Family 2009 Irrevocable Trust to pay approximately $50 million to Synovus Bank as Special Conservator II for their father, Keith S. Wellin (Wellin). We reverse.[1]
*769 FACTS/PROCEDURAL BACKGROUND
Wellin amassed considerable wealth in his lifetime primarily consisting of shares of stock in Berkshire Hathaway, Inc. He had three children-Peter, Cynthia, and Marjorie-with his first wife and remarried three times. Wellin married his fourth wife, Wendy, in 2002. In 2003, Wellin established Friendship Partners, LP and transferred 896 shares of Berkshire Hathaway Class A stock to Friendship Partners. Wellin, individually was a limited partner in Friendship Partners, initially owning limited partnership units representing 98.9% of the partnership. In 2007, Wellin transferred his limited partnership units to a trust, the Florida Revocable Trust, for which he was both **19 trustee and sole lifetime beneficiary. A separate entity, Friendship Management, LLC, was the general partner in Friendship Partners with managerial control and the remaining ownership interest. Cynthia was the manager of Friendship Management. In 2009, Wellin established the Wellin Family 2009 Irrevocable Trust (the Trust), an intentionally defective grantor trust.[2] He named Appellants as trustees and beneficiaries of the Trust.[3] Shortly after forming the Trust, Wellin, through the Florida Revocable Trust, sold limited partnership units, representing a 98.9% interest in Friendship Partners, to the Trust in exchange for a Promissory Note (the Note) issued by the Trust for approximately $50 million with provisions for periodic interest.
As time went on, Appellants began to believe Wendy was influencing Wellin and manipulating his finances to her advantage. In early 2013, Wellin gifted $10 million to each of his children and to Wendy as well. Later that year, Wellin filed an action in federal district court seeking to set aside those gifts to Appellants, but not to Wendy, and to set aside the 2009 transactions that benefited his children and lineal descendants via the Trust (Wellin I ). Appellants filed an action in probate court seeking the appointment of a conservator to protect Wellin's assets.
In August 2013, the probate court appointed Edward Bennett as a special conservator, pending mediation or a full hearing, with the role of "ensur[ing] that transfers of assets are not made without fair and adequate consideration." In November of 2013, Wellin, through Bennett, delivered a document to Appellants purporting to exercise a right under the Trust to substitute certain assets in exchange for Trust assets of equal value. To effectuate this swap, Wellin forgave the Note by marking it "Paid in Full," in exchange for a 58% limited partnership in Friendship Partners. Appellants, as trustees, rejected this swap transaction.
**20 The district court issued a temporary restraining order (TRO) in Wellin I enjoining Appellants from selling the Berkshire Hathaway stock. However, that TRO was dissolved. In December 2013, Friendship Partners liquidated its assets, consisting primarily of the Berkshire Hathaway stock, which was valued at approximately $157 million. The proceeds were distributed to the Trust.[4] Wellin filed an action in probate court alleging various breaches of duty against Appellants in selling the stock and distributing the majority of the proceeds to themselves (Wellin II ). The probate court granted a TRO enjoining the Appellants from disposing of or exercising any control over any proceeds related to the liquidation, but that case was removed to the *770 federal district court and the TRO was dissolved. The Trust tendered a check for $50 million to Bennett as payment for the Promissory Note, which was not due until 2021. Bennett rejected the payment, taking the position the Note ceased to exist after it was marked "Paid in Full" as part of the swap transaction. Bennett also demanded the Trust pay Wellin $92 million representing the value of a 58% interest in Friendship Partners.
Thereafter, in January 2014, Bennett filed an "Application for Guidance" pursuant to section 62-5-416(b) of the South Carolina Code (Supp. 2018), asking the probate court for guidance as to whether he had authority to pursue the $92 million on Wellin's behalf. The court conducted a hearing at which extensive arguments were made by counsel for Bennett, counsel for Appellants, and counsel for Wellin. At the hearing, Bennett stated he was seeking to clarify whether he, as conservator, had authority to pursue the $92 million. As the hearing progressed, Bennett eventually asked the probate court to require the Trust to pay at least the $50 million, represented by the Note, so those funds could be protected for Wellin's benefit pending the outcome of the district court litigation.
At the hearing, Appellants admitted Wellin was entitled to $50 million under the Note if the Note was then extinguished and even stated they would be willing to pay the funds into the court. The probate court ordered the Trust to pay $50 million **21 to Synovus Bank as a secondary conservator. Appellants filed a motion to reconsider, arguing the Promissory Note was an asset of Wellin's estate, but the $50 million was not. They maintained that accordingly, the probate court lacked jurisdiction to issue an order affecting the actual funds. They also argued the court lacked personal jurisdiction over the Trust as the children were appearing in their individual capacities in the conservatorship action, they had not been afforded due process in the absence of Bennett filing a summons and complaint seeking the $50 million, and the request should be dismissed pursuant to Rule 12(b)(8) of the South Carolina Rules of Civil Procedure because the same claims were being litigated in district court.[5]
Appellants also filed a motion for voluntary dismissal of the conservatorship action pursuant to Rule 41 of the South Carolina Rules of Civil Procedure. The probate court denied the motion finding Rule 41, dealing with dismissals prior to the filing of an Answer, did not apply to this case as a petition for a conservatorship does not require an Answer.
The probate court ultimately denied Appellants' motion to alter or amend its order finding Appellants had listed the Note as an asset of Wellin's estate and admitted Wellin was entitled to payment of it. The probate court further found the Trust was subject to the court's jurisdiction because the Trust had appeared and made arguments in the matter. The probate court also concluded a sufficiently similar matter was not currently pending in district court, so dismissal under Rule 12(b)(8) was not appropriate.
Appellants appealed to the circuit court which affirmed the probate court in toto . However, Appellants presented a new argument regarding mootness to the circuit court as Wellin died in September 2014 during the pendency of the appeal to the circuit court. The circuit court determined Wellin's death did not moot the appeal regarding the propriety of the order as the outcome of the appeal could have collateral consequences to the parties in that it would require Wellin's estate **22 to seek the same sort of protection and weighed against judicial economy. This appeal followed.
STANDARD OF REVIEW
In a probate appeal, the circuit court, court of appeals, or supreme court shall hear and determine the appeal according to the rules of law. S.C. Code Ann. § 62-1-308(i) of the South Carolina Code (Supp. 2018). "[I]f the action is at law, the circuit court should uphold the findings of the probate court if there is any evidence to support them; if the action is equitable, the circuit court may *771 make findings in accordance with its own view of the preponderance of the evidence." In re Estate of Weeks , 329 S.C. 251, 260, 495 S.E.2d 454, 459 (Ct. App. 1997).
LAW/ANALYSIS
Appellants contend the circuit court erred in affirming the probate court's determination it had authority to order payment of the $50 million into a protective trust. Appellants maintain the money was not part of Wellin's estate under section 62-5-402(2) of the South Carolina Code (Supp. 2018). We agree.
The probate court's jurisdiction is limited as it owes "its present existence to creation by statute, rather than the Constitution, and as such, can exercise only such powers as are directly conferred upon it by legislative enactment and such as may be necessarily incident to the execution of the powers expressly granted." Greenfield v. Greenfield , 245 S.C. 604, 610, 141 S.E.2d 920, 923 (1965).
Section 62-5-402(2) provides in pertinent part:
After the service of the summons and petition in a proceeding seeking the appointment of a conservator or other protective order and until termination of the proceeding, the probate court in which the summons and petition are filed has:
...
(2) exclusive jurisdiction to determine how the estate of the protected person which is subject to the laws of this State must be managed, expended, or distributed to or for the use of the protected person or any of his dependents **23 ....
Although section 62-5-402(2) confers jurisdiction "to determine how the estate of the protected person ... must be managed, expended, or distributed," the $50 million at issue was not part of Wellin's estate. The Note and the actual payment due thereunder are two related but distinct assets. The Note itself gives Wellin the right to demand payment of the $50 million providing all the terms of the Note are met. Although Appellants admit the Note is valid, the $50 million in payment would have only passed into Wellin's estate when the money was tendered and the Note was accepted, and marked satisfied. In this case, Wellin's position in the district court litigation and the swap transaction prevented Bennett from accepting the tender of payment by the Trust. Therefore, the $50 million was not part of Wellin's estate to be managed or protected, and the probate court erred in requiring it be deposited with Synovus Bank.
Even had the $50 million been part of Wellin's estate, the probate court lacked authority to issue the disputed order based on Bennett's failure to file a petition and summons with the probate court pursuant to section 62-5-416 of the South Carolina Code (Supp. 2018).
Section 62-5-416 deals with requests for orders in a conservatorship action. It provides:
(a) Upon filing a petition and summons with the appointing court, a person interested in the welfare of a person for whom a conservator has been appointed may request an order (1) requiring bond or security or additional bond or security, or reducing bond, (2) requiring an accounting for the administration of the trust, (3) directing distribution, (4) removing the conservator and appointing a temporary or successor conservator, or (5) granting other appropriate relief. The petition and summons must be served upon the conservator and other persons as the court may direct.
(b) Upon application to the appointing court, a conservator may request instructions concerning his fiduciary responsibility. A denial of the application by the court is not an adjudication and does not preclude a formal proceeding.
**24 (c) After notice and hearing as the court may direct, the court may give appropriate instructions or make any appropriate order.
Appellants contend the Application for Guidance filed by Bennett under subsection (b) was not merely an application for guidance but a request for substantive relief requiring more than an informal application. Wellin *772 characterizes the application as seeking a determination as to whether Bennett has a duty to pursue the $92 million Wellin may be entitled to from the proceeds of the Friendship Partners' liquidation. However, an actual reading of the application reveals Bennett is seeking more than a determination of his duty as special conservator. The application requests the probate court hold a hearing under subsection (c) and render two determinations: (1) Was Wellin's substitution of the assets effective? and (2) Was Wellin's release of his substitution power effective to turn off grantor trust status? Rendering determinations on these issues would exceed providing guidance as to Bennett's duty.
While subsection (c) affords the probate court authority to issue an appropriate order dealing with the consequence of a hearing, it does not render meaningless the requirements of subsection (a) when the application in question is clearly seeking more from the probate court than instruction. See CFRE, LLC v. Greenville Cty. Assessor , 395 S.C. 67, 74, 716 S.E.2d 877, 881 (2011) (stating statutes should be read so that no particular section is rendered superfluous).
Finally, even if the probate court had subject matter jurisdiction and authority to issue the disputed order, the order required action by the Trust, which had not been made party to the conservatorship action.
"Although a court commonly obtains personal jurisdiction by the service of the summons and complaint, it may also obtain personal jurisdiction if the defendant makes a voluntary appearance." Ex parte Cannon , 385 S.C. 643, 658, 685 S.E.2d 814, 822 (Ct. App. 2009) (quoting Stearns Bank Nat'l Ass'n v. Glenwood Falls, L.P. , 373 S.C. 331, 337, 644 S.E.2d 793, 796 (Ct. App. 2007) ). "A defendant may waive any complaints he may have regarding personal jurisdiction by failing to object to the lack of personal jurisdiction and by **25 appearing to defend his case." Id . (quoting State v. Dudley , 354 S.C. 514, 542, 581 S.E.2d 171, 186 (Ct. App. 2003) ).
In Ex parte Cannon , Cannon argued the circuit court lacked personal jurisdiction over him because he had only appeared in the case in his capacity as a personal representative, not a trustee. Id . at 657-58, 685 S.E.2d at 822. However, this court concluded "[b]y appearing and arguing the merits of the action multiple times before the circuit court, ... Cannon consented to the circuit court's personal jurisdiction and waived any defense of lack of personal jurisdiction." Id . at 660, 685 S.E.2d at 823. In this case, Appellants, in their individual capacities, brought the conservatorship action. The Trust was never made a party to the conservatorship action. While Appellants participated in the singular hearing on Bennett's Application for Guidance, they objected to the probate court treating the Trust as a party, arguing the probate court did not "have jurisdiction over the asset. The [T]rust is not even a party to this proceeding. The owner of the asset is not here." Again, Appellants argued the probate court lacked "jurisdiction to order us to pay that note, because the party's not here who owns - who has the $50 million. That's not my clients individually, that's the [T]rust." Admittedly, Appellants' attorney at times participated in the exchange among the parties regarding depositing the $50 million into the court. However, we conclude that conduct did not rise to the level of a waiver of personal jurisdiction on behalf of the Trust when Appellants continued to voice their objections.
Based on all of the foregoing, the order of the circuit court affirming the probate court is
REVERSED.[6]
MCDONALD and HILL, JJ., concur.

As will be seen, the parties to this action are involved in related, ongoing litigation in other forums. Our opinion only addresses the narrow issues presented in this appeal.

This type of trust allows the Trust to be disregarded for federal income tax purposes so that the grantor continues to be taxed on any income realized by the Trust thereby increasing the total assets available for the Trust's beneficiaries.

Trust beneficiaries include Wellin's lineal descendants beyond his three children.

Appellants maintain this was done to prevent the Trust from incurring significant tax liability.

Immediately following the probate court's order in this case, Wellin filed in the probate court a petition for the return of assets (the $92 million), which was then removed to the district court (Wellin III ).

We decline to rule on Appellants' remaining issues on appeal. See Futch v. McAllister Towing of Georgetown, Inc. , 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (declining to address the remaining issues when a prior issue was dispositive).