556 S.E.2d 383

**COUNTY OF GREENVILLE, Respondent,**

**v.**

**Fletcher C. MANN, Jr., Appellant.**

**No. 25383.**

Supreme Court of South Carolina.

Heard Nov. 13, 2001.
Decided Dec. 3, 2001.

O.W. Bannister, Jr., of Bannister & Wyatt, LLC, of Greenville, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor Robert M. Ariail, of Greenville, for respondent.

TOAL, Chief Justice:

The Greenville County Clerk of Court, Fletcher C. Mann, Jr. ("Mann"), appeals the circuit court's order holding him in criminal contempt for failing to destroy certain firearms as required by an earlier court order.

## FACTUAL/PROCEDURAL BACKGROUND

In 1996, Greenville County began construction of a new courthouse and renovation of its old courthouse. During the construction, numerous civil and criminal court exhibits were discovered which had been stored for long periods of time.[1] Mann, as Clerk of Court, hired Shawn Knox ("Knox") to inventory the exhibits. Knox researched the old exhibits to determine if it was legally appropriate to destroy them. Knox compiled a list of all the exhibits and presented it to a judge for a decision on whether the exhibits needed to be retained or could be discarded. The judge went through the list, indicating which items could be discarded and which needed to be retained. The judge issued a total of nine court orders dealing with the disposal of the exhibits which were no longer needed. This appeal concerns the order issued by the judge which dealt with the destruction of certain firearms. That order, dated February 28, 1997, provided:

It is hereby ordered, adjudged, and decreed that the Clerk of Court shall destroy any and all weapons and/or ammunitions in its possession and designated by me in the attached pages one (1) through seventeen (17) to be destroyed. These weapons were submitted as criminal exhibits in general sessions cases tried before 1991 in which the defendants have completed their probation or are barred by the statute of limitations from further proceedings. The Clerk of Court shall witness the destruction of the aforementioned exhibits

---

1. The testimony indicates the exhibits were from trials which took place between the late 1950s and 1991.

according to law. This order is done in accordance with §§ 16–23–405, 16–23–50, 23–31–180, 16–23–500, South Carolina Code of Laws, 1976.

Mann admits that while he never actually *saw* or *read* this Order, he was aware that the Order existed. Apparently it was this knowledge which caused Mann to delegate the oversight of the weapons' destruction to Deputy Clerks Nancy Coggins ("Coggins"), Carol Hollis ("Hollis"), and Leanda Handley ("Handley"). However, after Mann delegated his responsibility, no apparent action was taken on the Order until February of 2000.[2]

In February 2000, a site for destroying the firearms was located in Spartanburg County. On February 2, 2000, at the direction of Coggins, Hollis, and Handley, Arthur Jordan ("Jordan") and Andrea Plumley ("Plumley"), employees of the Greenville County Clerk of Court, and Greenville County Deputy Michael Jolly ("Jolly") took the weapons listed in the February 28, 1997, Order and transported them to the recycling facility in Spartanburg. While removing the weapons from the car at the recycling facility, the group noticed a rifle with a glass scope which, because of the glass, could not be destroyed. The testimony indicates that Jolly and Plumley also noticed and expressed an interest in several other weapons which they believed to be of historical or financial value.[3] Jordan called Mann from the recycling center to inquire about what should be done with the gun with the scope and the guns with historical or financial value. Although there is conflicting testimony about what exact weapons were discussed during the phone conversation, it appears Mann told Jordan: (1) Jolly could keep the weapons Jolly believed to be of value; and (2)

---

**2.** Knox testified he did have discussions concerning the destruction of the firearms with Mann on several occasions between 1997 and 2000. One discussion concerned the repeal of a statute listed in the judge's Order which originally provided for the auctioning of guns. Other than Knox's testimony that these "discussions" took place, there is no other evidence in the record that Mann took any discernable action in response to the Order until February 2000. However, the Order did not direct Mann to destroy the firearms by a specific date or within a specific time frame.

**3.** The testimony indicates Jordan and Jolly hoped to bid on the weapons at an auction. However, the statute which allowed for such an auction, section 16–23–500, was repealed, effective May 27, 1998.

Mann would get in touch with Jolly at a later time.[4]  Jolly secured a total of seven weapons, five for himself and two for Plumley.  The weapons were taken from the recycling center and remained in Jolly and Plumley's personal possession.  The other weapons were destroyed as required.

Later that day, Jordan contacted Mann through inter-office email.  He summarized what transpired and stated, "there were in total, I think, three weapons that were secured by Officer Jolly per your request.  I did as requested and let Mike [Jolly] pick weapons that were in good condition. . . . Andrea Plumley is preparing the papers necessary to comply with . . . [the] order for destruction of these items."  Jordan testified he received a response from Mann that same day.  Mann's response stated, "it appears to me that everything was handled properly up to this point.  You and I need to follow-up with Mike Jolly, with Friday being the best time to do so. I would also like to review with you and Andrea [Plumley] the paperwork that she is preparing, so that we can finalize that part as well."  Mann never met with Jolly, Jordan, or Plumley regarding the guns that were not destroyed.  Jolly and Jordan testified that, after the trip to the recycling center in Spartanburg, Jolly made several attempts to contact Mann, but to no avail.

In March 2000 (one month after Jolly, Jordan, and Plumley went to the recycling center to destroy the weapons), SLED began an investigation of the activity surrounding the destruction of the weapons.  Jolly retrieved all the weapons and turned them over to SLED. A Greenville County Grand Jury investigated the matter and, on April 4, 2000, recommended that the court require Mann to explain why the weapons were not destroyed.  On April 5, 2000, a Rule to Show Cause was

---

**4.**  Mann testified that his conversation with Jordan concerned only one gun—the one with the glass scope.  Mann also testified he did not recall giving Jordan any authority to take any guns into his possession.  The testimony from Jordan, Plumley, and Jolly, as well as the subsequent emails between Mann and the group, indicate the conversation dealt with more than the single gun.  Furthermore, the Statement of Facts in Mann's brief states, "Mann approved Deputy Jolly taking possession of the valuable or historical weapons until it could be determined if they should be destroyed or auctioned."  At the very least, Mann was aware later that same day that Jordan had several guns in his possession after receiving an email from Jordan stating as much.

issued directing Mann to show cause why he should not be held in contempt of court for failing to comply with the Order of February 28, 1997. On April 25, 2000, pursuant to the Rule to Show Cause, Mann appeared before the same judge who issued the original Order. At the conclusion of the hearing, the judge found Mann in criminal contempt of court. The judge ordered Mann to immediately comply with the prior Order and to pay a fine of $1,500.00. This appeal followed, and the issues now before this Court are:

I.  Did the court err in holding Mann in criminal contempt for failing to obey the February 28, 1997, Order since the judge lacked jurisdiction to issue the Order and since the Order was ambiguous, contradictory in its direction, and in conflict with the cited statutes?

II.  Did the court err in holding Mann in criminal contempt because the sanction ordered was both a criminal fine and a civil order to comply?

III. Was there sufficient evidence to show Mann intentionally disobeyed the court's February 28, 1997, Order?

## LAW/ANALYSIS

### I. Jurisdiction and Ambiguity

■ Mann argues the judge lacked jurisdiction to issue the February 28, 1997, Order and that the Order was ambiguous, contradictory in its direction, and in contravention of the cited statutes. We agree.

■ The February 28, 1997, Order provided:

It is hereby ordered, adjudged, and decreed that the Clerk of Court shall destroy any and all weapons and/or ammunitions in its possession and designated by me in the attached pages one (1) through seventeen (17) to be destroyed. These weapons were submitted as criminal exhibits in general sessions cases tried before 1991 in which the defendants have completed their probation or are barred by the statute of limitations from further proceedings. The Clerk of Court shall witness the destruction of the aforementioned exhibits according to law. *This order is done in accordance with §§ 16–23–405, 16–23–50, 23–31–180, 16–23–500, South Carolina Code of Laws, 1976.* (emphasis added).

The cited sections of the South Carolina Code, as they existed in 1997, at the time the judge issued his Order,[5] provided as follows:

Section 16–23–405(2):

A person convicted of a crime, in addition to any penalty, shall have any weapon used in the commission or in further-ance of the crime confiscated. Each weapon must be deliv-ered to the chief of police of the municipality or to the sheriff of the county, if the violation occurred outside the corporate limits of a municipality. The law enforcement agencies that received the confiscated weapons shall use them within their departments, transfer them to another law enforcement agency for their lawful use, or transfer them to the clerk of court or mayor who shall dispose of them as provided by § 16–23–500. Firearms seized by the State Law Enforcement Division may be kept by the divi-sion for use by its forensic laboratory.

Section 16–23–50(B):

In addition to the penalty provided in this section, the pistol involved in the violation of this article must be confiscated. The pistol must be delivered to the chief of police of the municipality or to the sheriff of the county, if the violation occurred outside the corporate limits of a municipality. The law enforcement agencies that receive the confiscated pis-tols may use them within their department, transfer them to another law enforcement agency for their lawful use, trans-fer them to the clerk of court or mayor who shall dispose of them as provided by Section 16–23–500, or trade them with a retail dealer licensed to sell pistols in this State for a pistol or any other equipment approved by the agency. If the State Law. Enforcement Division seized the pistol, it may keep it for use by its forensic laboratory. Records

5. Sections 16–23–50, 16–23–405, and 23–31–180 were amended after the Order was issued. The amendments became effective in May 1998. Section 16–23–500 has been repealed since the Order was issued, effective in May 1998. However, when determining whether the Order was ambiguous, this Court applies the statutes cited in the Order as they existed *at the time the Order was issued.* Neither party cited the correct statutes to this Court.

must be kept of all confiscated pistols received by the law enforcement agencies under the provisions of this article.

Section 16–23–500:

The clerk of court in each county and the mayor of each town and city or his designee shall keep a written record of all weapons, as defined by § 16–23–405, confiscated or forfeited to the custody of the clerk of court, mayor, or other municipal official. The record shall include the make, caliber, and serial number of the weapon and a notation of the legal proceeding which resulted in the confiscation or forfeiture.

At the end of each quarter the clerk of court and the mayor or his designee shall sell at public sale or by sealed bids to a dealer licensed under the provisions of Article 3 of Chapter 31 of Title 23 who is the highest bidder, after one public notice published in a newspaper of general circulation in the appropriate municipality or county, all confiscated or forfeited weapons then held by the clerk of court or the mayor. Weapons may not be sold until the results of the legal proceeding in which they are involved have been finally determined.

When the highest price offered for any weapon is less than twenty-five dollars or if it is a weapon described in § 23–31–180 or any other weapon possession of which is unlawful, a weapon may not be sold but must be destroyed by the official conducting the sale. Any other bid may also be rejected by the person conducting the sale if he determines the bid to be inadequate.

All public sales provided for in this section are subject to the provisions of § 16–23–30. Proceeds of sales by clerks of court must be deposited in the general fund of the county and proceeds of sales by city or town officials must be deposited in the city or town treasury.

Section 23–31–180:

No licensed retail dealer may hold, store, handle, sell, offer for sale, or otherwise possess in his place of business a pistol or other handgun which has a die-cast, metal alloy frame or receiver which melts at a temperature of less than eight hundred degrees Fahrenheit.

A pistol or other handgun possessed or sold by a dealer in violation of this article is declared to be contraband and must be forfeited to the municipality where seized or to the county where seized if outside a municipality. The weapon must be disposed of as provided by Section 16–23–500. However, any law enforcement agent may register and use these weapons in the line of duty.

We find the Order is ambiguous and contradictory because on the one hand it orders Mann to destroy certain weapons, but on the other hand it orders Mann to comply with statutes that require him to conduct a public auction. *See* S.C.Code Ann. § 16–23–500 (1976).[6] According to the statute, before a weapon could be destroyed, the clerk of court had to first conduct a public auction or sealed bidding. *Id. If* the highest price offered for a weapon at the public sale or by sealed bid was less than twenty-five dollars or deemed inadequate, then, and only then, could the weapon to be destroyed. *Id.* The 1997 statutes do not include the option of destroying the weapons outright, as was required by the judge's Order.[7] Therefore, on its face, the language of the Order is ambiguous and contradictory.

■ "One may not be convicted of contempt for violating a court order which fails to tell him in definite terms what he must do." *Welchel v. Boyter,* 260 S.C. 418, 421, 196 S.E.2d 496, 498 (1973); *American Fed. Bank v. Kateman,* 335 S.C. 273, 516 S.E.2d 1 (Ct.App.1999). Therefore, because the Order is ambiguous and contradictory, Mann cannot be held in contempt for failing to comply with the Order.

---

6. Sections 16–23–405, 16–23–50, and 23–31–180 do not apply to the weapons in this case. All the weapons covered by the judge's Order were exhibits in criminal trials, and therefore in the custody of the Clerk of Court. They were not weapons which, after being confiscated by deputies or police officers, were in the custody of the police department. All the weapons at issue were in the custody and control of the Clerk of Court, and, therefore, Mann was required to comply with section 16–23–500.

7. The newest version of the statutory scheme does contain an option of destroying the weapons. *See* Effect of Amendment, § 16–23–50 (Supp. 2000) ("The 1998 amendment, in subsection (B), deleted the option of transferring the pistol to the clerk of court or mayor for disposal, *added the option of destroying the pistol* . . .") (emphasis added).

■ Furthermore, the judge did not have the authority to order the destruction of the weapons. There were very specific statutes on the books which dealt with the disposal of confiscated weapons. As discussed above, the legislature did not give the clerk, sheriff, or anyone else the authority to destroy weapons without first attempting to auction them. Therefore, the judge could not issue an Order requiring the Clerk of Court to destroy weapons which the legislature had specifically indicated were to be auctioned.

This Court notes the considerable uncertainty surrounding the statutory requirements governing the disposal of exhibits, weapons, and so forth which existed at the time the judge issued his Order. We sympathize with the judge's attempt to develop an appropriate method for disposing of the numerous exhibits. Our own task in sorting through the statutes was not made any easier by the fact that neither party has cited the correct law to this Court.

Regardless of the ambiguity in the Order, Mann's conduct in delaying any attempt to comply with or seek clarification of the Order for three years was irresponsible. Mann's failure to assure that his staff did not violate the statutes by taking the weapons for their own purposes clearly demonstrates that Mann was not faithful to his statutory responsibilities. Although Mann technically prevails in this matter it is a Pyrrhic victory in light of the events which precipitated his departure from office.

Since this Order was issued, this Court and the legislature recognized the confusion in this area. In response, the legislature has amended the statutes and this Court has adopted Rule 606, SCACR. Rule 606, which deals with the retention and disposition of exhibits in the circuit and family courts, became effective September 1, 1997. With respect to illegal items, the rule provides: "when the exhibit is a weapon, controlled substance, poison, explosive or any other kind of property which the offering party may not lawfully posses ... the exhibit shall be disposed of in the manner provided by law or in a manner provided by the court." Rule 606(e), SCACR. This rule indicates that when there is a specific statute or law providing for the disposal of the item, the statute or law should be followed. However, when there is no law or statute

dealing directly with the illegal item, the court may direct the manner of disposal.

## II. Civil/Criminal Contempt and III. Evidence of Intent

In light of our holding above, it is not necessary for this Court to address Mann's remaining two issues.

## CONCLUSION

Based on the foregoing, we **REVERSE** the circuit court's order holding Mann in criminal contempt.

MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.