685 S.E.2d 814

#### Ex Parte David G. CANNON, Appellant,

Ex Parte Georgia Attorney General's Office; South Carolina Attorney General's Office; Terry Brown, Romunzo Brown, Forlando Brown, Darren Lumar; M&T Bank; Tommie Rae Hynie Brown; Stephen L. Slotchiver, the GAL of James Brown, II; Larry Brown, Daryl Brown (individually and on behalf of his minor children Lindsey Delores Brown and Janise Vanisha Brown), Vanisha Brown; Deanna J. Brown Thomas (individually and on behalf of her minor child Jackson Brown–Lewis),

Yamma N. Brown Lumar (individually and on behalf of her minor children Sydney Lumar and Carrington Lumar), Tonya Brown; Robert L. Buchanan, Jr., and Adele J. Pope, as Special Administrators; Albert Dallas and Alfred A. Bradley, as Personal Representatives of the Estate of James Brown, a/k/a James Joseph Brown, Respondents,

In re The Estate of James Brown, a/k/a
James Joseph Brown, Respondent.

No. 4570.

Court of Appeals of South Carolina.

Heard May 12, 2009.
Decided June 23, 2009.
Withdrawn, Substituted and Refiled Nov. 6, 2009.

646

648

Jan L. Warner, of Columbia, for Appellant.

Adele J. Pope, of Columbia, Albert P. Shahid, Jr., of Charleston, Assistant Attorney General C. Havird Jones, Jr., of Columbia, David Bell, of Augusta, Senior Assistant Attorney General Grace Lewis, of Atlanta, James D. Bailey, of Aiken, Louis Levenson, of Atlanta, Robert L. Buchanan, Jr., of Aiken, Robert Rosen, of Charleston, Ronald A. Maxwell, of Aiken, Stanley G. Jackson, of Aiken, Stephen H. Brown, of Charleston, Tressa T. Hayes, of West Columbia, for Respondents.

WILLIAMS, J.

David Cannon appeals the circuit court's order finding him in contempt of court and imposing a sanction of a six-month imprisonment sentence with the ability to purge the confinement upon the payment of specified fees and a fine. We affirm in part, reverse in part, and remand.

## FACTS/PROCEDURAL HISTORY

On August 1, 2000, James Brown signed an irrevocable trust agreement (the Trust) and a last will and testament (the Will). Cannon, Albert Dallas, and Alfred Bradley were named trustees of the Trust. Brown died on December 25, 2006, and the probate court appointed Cannon, Dallas, and Bradley as personal representatives of Brown's Estate (the Estate).

In January 2007, a petition for the removal of the personal representatives was filed in the probate court, alleging issues with the manner in which Cannon, Dallas, and Bradley handled both the Estate and the Trust. The case was removed to the circuit court on the probate court's own motion, and a hearing on the matter was held on February 9, 2007. The circuit court subsequently issued an order allowing for the appointment of limited Special Administrators (the SAs) for monitoring purposes. Robert Buchanan, Jr., and Adele J. Pope were appointed as the SAs. The order also limited the authority of Cannon, Dallas, and Bradley regarding the Estate and the Trust.

The circuit court granted the SAs access to files, books, and records of the Estate and the Trust in June 2007. Upon reviewing the Trust's checkbook, the SAs discovered a $900,000 check payable to an account at M & T Bank (M & T) had been incorrectly deposited in the Trust's checking account. The entire $900,000 was removed from the Trust's account between August 1 and December 28, 2006. The SAs alleged Cannon, rather than Dallas or Bradley, was responsible for the transactions associated with the deposit and removal of the funds.

Because of the misappropriation, the SAs filed a motion seeking removal of one or more of the personal representatives and/or trustees. A hearing on the matter was held on August 10, 2007, and Cannon voluntarily submitted his resig-

nation as personal representative, trustee, and fiduciary to the Estate and the Trust. Following the hearing, the circuit court issued an order immediately relinquishing Cannon's "signatory authority on all transactions, accounts, contracts, checks and/or instruments or undertakings of any kind for James Brown, the Estate, the Brown Entities, and the Brown Trusts." Cannon was ordered to pay the Estate $350,000 and to provide a full accounting to the SAs of all records related to the Estate and the Trust. Cannon paid the $350,000 that same day.

The circuit court held another hearing on September 24, 2007, and issued an order on October 2, 2007. In this order, the circuit court found Cannon in contempt for failing to account to the SAs. The circuit court scheduled a later hearing to determine the willfulness of Cannon's actions in failing to account.

In an effort to recoup funds owed to the Estate, the circuit court additionally ordered Cannon to pay the Estate $373,000 in the October 2, 2007 order. This sum was found to be the remaining amount owed from the misappropriated $900,000. The circuit court also ordered Cannon to pay $30,000 as a deposit towards claims related to attorneys' fees and costs.

Subsequently, a hearing was held on November 15 and 20, 2007, to determine both the willfulness of Cannon's failure to account and whether Cannon had paid the Estate $373,000 and $30,000 as mandated by the circuit court's October 2, 2007 order. At the hearing, Cannon testified he paid the $30,000 but did not have the ability to pay the $373,000. Cannon also stated he participated in the amendment of tax returns for James Brown Enterprises Corporation (the Corporation) after his resignation and the circuit court's August 10, 2007 order relinquishing all of his authority, including his signatory authority.

On December 18, 2007, the circuit court issued an order finding Cannon in contempt of court for failing to pay the Estate $373,000 and for failing to relinquish all of his authority; he was not, however, found to be in willful contempt for failing to account. Cannon was ordered to be imprisoned for a period of six months, but Cannon could "purge himself of this confinement by the payment of the aforementioned $373,000,

the payment into [the circuit] court of $50,000.00 to be applied towards the payment of attorneys' fees as incurred by the various parties, and the payment of a fine of $10,000.00." Cannon had until "January 25, 2008[,] to completely purge himself."

Cannon filed a motion to reconsider, which the circuit court denied. This appeal followed.

## I. JURISDICTION
### STANDARD OF REVIEW

Personal jurisdiction may be waived, but subject matter jurisdiction may not be waived. *Eaddy v. Eaddy*, 283 S.C. 582, 584, 324 S.E.2d 70, 72 (1984). Lack of subject matter jurisdiction can be raised at any time, even for the first time on appeal, by a party or by the court. *Lake v. Reeder Constr. Co.*, 330 S.C. 242, 248, 498 S.E.2d 650, 653–54 (Ct.App. 1998).

### LAW/ANALYSIS

### A. SUBJECT MATTER JURISDICTION

Cannon argues the circuit court lacked subject matter jurisdiction to issue any orders regarding his acts as trustee of the Trust. Specifically, Cannon argues section 62–7–201 of the South Carolina Code (2009) does not provide the circuit court with subject matter jurisdiction over internal trust matters. We disagree.

"Subject matter jurisdiction is the power to hear and determine cases of the general class to which the proceedings in question belong." *Majors v. S.C. Sec. Comm'n*, 373 S.C. 153, 159, 644 S.E.2d 710, 713 (2007). "The jurisdiction of a court over the subject matter of a proceeding is determined by the Constitution, the laws of the state, and is fundamental." *Peterson v. Peterson*, 333 S.C. 538, 547, 510 S.E.2d 426, 431 (Ct.App.1998).

When construing a statute, the cardinal rule is to ascertain the intent of the legislature. *Georgia–Carolina Bail Bonds, Inc. v. County of Aiken*, 354 S.C. 18, 22, 579 S.E.2d 334, 336 (Ct.App.2003). "A statute should be given a reason-

able and practical construction consistent with the purpose and policy expressed in the statute." *Id.* at 22–23, 579 S.E.2d at 336. "All rules of statutory construction are subservient to the one that legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in the light of the intended purpose of the statute." *Id.* at 23, 579 S.E.2d at 336.

"The legislature's intent should be ascertained primarily from the plain language of the statute." *Id.* If, however, the language of the statute gives rise to doubt or uncertainty as to legislative intent, the construing court looks to the statute's language as a whole in light of its manifest purpose. *Id.* at 25, 579 S.E.2d at 337–38. The construing court may additionally look to the legislative history when determining the legislative intent. *State v. Byrd,* 267 S.C. 87, 92, 226 S.E.2d 244, 247 (1976).

In determining whether the circuit court possessed subject matter jurisdiction in the instant matter, we must first examine the statutes Cannon argues give the probate court exclusive jurisdiction. The South Carolina Probate Code grants the probate court "exclusive jurisdiction of proceedings initiated by interested parties concerning the internal affairs of trusts." § 62–7–201(a). This exclusive jurisdiction, however, is subject to section 62–1–302(c), which states, "The probate court has jurisdiction to hear and determine issues relating to paternity, common-law marriage, and interpretation of marital agreements in connection with estate, trust, guardianship, and conservatorship actions pending before it, concurrent with that of the family court. . . ." S.C.Code Ann. § 62–1–302(c) (2009).

Section 62–7–201(a) specifically deals with the internal affairs of trusts and grants exclusive jurisdiction to the probate court in those proceedings. Section 62–7–201(a) also states, however, that the probate court's exclusive jurisdiction is "[s]ubject to the provisions of [s]ection 62–1–302(c)," meaning there is one instance when this exclusive jurisdiction may be taken away from the probate court. Section 62–1–302(c), on the other hand, has no language divesting the probate court of exclusive jurisdiction. Rather than divesting the probate court of jurisdiction, section 62–1–302(c) provides the probate

court with additional jurisdiction it did not previously have. Section 62–1–302(c) gives the probate court concurrent jurisdiction with the family court to determine, in specific circumstances, issues of paternity, common-law marriage, and the interpretation of marital agreements. It is, therefore, difficult to reconcile section 62–7–201(a) with section 62–1–302(c). Consequently, the plain language of section 62–7–201(a) referencing section 62–1–302(c) gives rise to uncertainty. We, therefore, look to the language of the two statutes as a whole and the legislative history to determine the legislative intent of section 62–7–201(a). *See Georgia–Carolina Bail Bonds, Inc.,* 354 S.C. at 25, 579 S.E.2d at 337–38 ("If the language of an act gives rise to doubt or uncertainty as to legislative intent, the construing court may search for that intent beyond the borders of the act itself.... In construing a statute, the court looks to the language as a whole in light of its manifest purpose.").

After reviewing both the language of section 62–7–201 and section 62–1–302 as a whole and the legislative history of the two statutes, we believe the reference to section 62–1–302(c) in section 62–7–201(a) to be a scrivener's error.[1] We find the legislative intent was to reference section 62–1–302(d), which specifically discusses divestment of the probate court's "exclusive jurisdiction" and reads,

> Notwithstanding the exclusive jurisdiction of the probate court over the foregoing matters, any action or proceeding filed in the probate court and relating to the following subject matters, on motion of a party, or by the court on its own motion, ... must be removed to the circuit court and in these cases the circuit court shall proceed upon the matter de novo: ... (4) trusts....

S.C.Code Ann. § 62–1–302(d) (2009).

Section 62–7–201 of the South Carolina Trust Code was enacted May 23, 2005. Act No. 66, 2005 S.C. Acts 280, 317. At that time, section 62–1–302(c) was the current section 62–1–302(d), discussing the issue of the circuit court's concurrent

---

1. While our analysis does not rely on or give weight to the proposed amendment, we note on March 26, 2009, the South Carolina House of Representatives proposed a bill to amend section 62–7–201(a) to read, "Subject to the provisions of Section 62–1–302(c) *and (d)*,...." H.R. 3803, 118th Sess. (S.C. 2009) (emphasis in original).

jurisdiction with the probate court. S.C.Code Ann. § 62–1–302(c) (1987). Subsequently, on June 3, 2005, section 62–1–302 was amended, and the legislature added the current section 62–1–302(c) and reassigned the sub-section regarding a party's right to remove a proceeding to the circuit court to section 62–1–302(d). Act No. 132, 2005 S.C. Acts 1528. Therefore, when section 62–7–201 was enacted and section 62–1–302(c) was referenced, the legislature was referencing what is the current section 62–1–302(d), meaning the legislative intent was to give the circuit court jurisdiction to hear trust matters removed from the probate court.

Further, the "South Carolina Comment" section of section 62–7–201 states:

> [South Carolina Trust Code] subsections 62–7–201(a) and (b) incorporate former South Carolina Probate Code Section 62–7–201 regarding the Probate Court's exclusive jurisdiction over the internal affairs of trusts.... Such exclusive jurisdiction is subject to Section 62–1–302(c) of the South Carolina Probate Code regarding a party's right to remove a proceeding to the *circuit court.*

(emphasis added). As the current section 62–1–302(c) discusses the family court's jurisdiction and makes no reference to removal of a proceeding or the circuit court, this comment can only indicate the legislature intended to refer to section 62–1–302(d).

Based on the language of the statutes as a whole, the statutes' comments, and the legislative history, we find the legislative intent of section 62–7–201(a) is to allow removal of internal trust matters, by a party or the probate court on its own motion, to the circuit court. Therefore, it was proper for the probate court to remove the matter to the circuit court on the court's own motion, giving the circuit court subject matter jurisdiction to hear the case.

## B. PERSONAL JURISDICTION

Cannon argues he was never made a party to any proceedings in his capacity as trustee, has never been served with a rule to show cause for contempt, and was only before the circuit court in his capacity as personal representative, and

therefore, the circuit court lacked personal jurisdiction over him. We disagree.

"By accepting appointment, a personal representative submits personally to the jurisdiction of the court in any proceeding relating to the estate that may be instituted by any interested person." S.C.Code Ann. § 62–3–602 (2009). "By accepting the trusteeship of a trust having its principal place of administration in this State ... the trustee submits personally to the jurisdiction of the courts of this State regarding any matter involving the trust." S.C.Code Ann. § 62–7–202(a) (2009).

"Although a court commonly obtains personal jurisdiction by the service of the summons and complaint, it may also obtain personal jurisdiction if the defendant makes a voluntary appearance." *Stearns Bank Nat'l Ass'n v. Glenwood Falls, LP*, 373 S.C. 331, 337, 644 S.E.2d 793, 796 (Ct.App.2007). "Voluntary appearance by [a] defendant is equivalent to personal service...." Rule 4(d), SCRCP. "A defendant may waive any complaints he may have regarding personal jurisdiction by failing to object to the lack of personal jurisdiction and by appearing to defend his case." *State v. Dudley*, 354 S.C. 514, 542, 581 S.E.2d 171, 186 (Ct.App.2003); *see Cheraw Motor Sales Co. v. Rainwater*, 125 S.C. 509, 513 119 S.E. 237, 239 (1923) ("The defendant filed his answer and tried his case on the affidavit in attachment, and thereby waived his right to his motion [to dismiss the proceedings because there was no summons and complaint served].").

This failure to object resulting in waiver of personal jurisdiction applies equally in constructive contempt cases. *See Bakala v. Bakala*, 352 S.C. 612, 629, 576 S.E.2d 156, 165 (2003) (finding constructive contempt proceedings are commenced by a rule to show cause and that the record indicated service of the rule to show cause was not accomplished correctly, but because the appellant never raised the issue, his objections to personal jurisdiction were waived).

Shortly after Brown's death, a petition for the removal of Cannon as trustee was filed in the probate court. A certificate of service was served upon Cannon's counsel. The probate court, on its own motion, removed all matters to the

circuit court, with no objection by Cannon. Later, a petition for accounting was filed, and Cannon's counsel signed an "Acknowledgement of Service," which waived all objections to defects in service of process.

Cannon and his counsel appeared at the August 10, September 24, and November 15 and 20, 2007 hearings and never made a motion or an objection as to the personal jurisdiction of the circuit court. At the August 10, 2007 hearing, counsel for the SAs began by discussing their "motion related to the recommendation that one or more of the [personal] representatives and trustees be removed." Counsel stated, "[A]lthough some of these captions bear the name Estate, this is an order that clearly extends to the estate—a recommendation that it extends to the estate, the trusts, and what we call the Brown entities. . . . " Again, no objection was made by Cannon or his counsel. Cannon then specifically consented to the terms of the August 10, 2007 order, which formed the basis for all contempt proceedings.

Before the conclusion of the August 10, 2007 hearing, the circuit court issued an "oral subpoena" ordering Cannon to be present at the September 24, 2007 hearing, ready "to be called for testimony subject to cross examination. . . . " As before, no objection was made. With this oral subpoena, the circuit court gave Cannon actual notice of the proceedings in which he was a party, and in response, Cannon and his counsel appeared and again argued the merits.

Cannon clearly had notice of all proceedings and waived any defects that might have occurred. *See Stickland v. Consol. Energy Prods. Co.*, 274 S.C. 554, 555, 265 S.E.2d 682, 683 (1980) ("A general appearance constitutes a voluntary submission to the jurisdiction of the court and waives any defects and irregularities in the service of process."); *H.S. Chisholm, Inc. v. Klinger*, 229 S.C. 8, 16, 91 S.E.2d 538, 542 (1956) ("[T]he appellants had actual notice of the issuance and contents of the rule [to show cause, which was improperly filed] by the personal service of it upon them, and in response to it they appeared by counsel."). Cannon never raised the issue of improper service of process and, consequently, never objected to personal jurisdiction of the circuit court. *See Bakala*, 352 S.C. at 629, 576 S.E.2d at 165 (finding husband never raised

the issue of improper service of rule to show cause in constructive contempt case and, therefore, waived his objection to personal jurisdiction). By appearing and arguing the merits of the action multiple times before the circuit court, we find Cannon consented to the circuit court's personal jurisdiction and waived any defense of lack of personal jurisdiction.[2]

Finding the circuit court had both subject matter jurisdiction and personal jurisdiction to hear this matter, we now address the merits of Cannon's appeal.

## II. CONTEMPT
### STANDARD OF REVIEW

"A decision on contempt rests within the sound discretion of the [circuit] court." *Floyd v. Floyd*, 365 S.C. 56, 71, 615 S.E.2d 465, 473 (Ct.App.2005). It is within the circuit court's discretion to punish by fine or imprisonment every act of contempt before the court. *Miller v. Miller*, 375 S.C. 443, 454–55, 652 S.E.2d 754, 760 (Ct.App.2007). On appeal, this Court should reverse the contempt decision only if it is without evidentiary support or the circuit court abused its discretion. *Floyd*, 365 S.C. at 71–72, 615 S.E.2d at 473. Additionally, the finding of contempt is immediately appealable. *Id.* at 72, 615 S.E.2d at 473–74.

### LAW/ANALYSIS

Cannon argues the circuit court erred by converting his civil contempt into criminal contempt and by not affording him due process. We disagree.

All courts have the inherent power to punish for contempt, which "is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders and writs of the courts, and consequently to the due administration of justice." *Miller*, 375 S.C. at 453, 652 S.E.2d at 759. "Contempt results from the willful disobedience of a court order, and before a court may find a person in contempt, the record must clearly and specifically reflect the contemptuous conduct." *Widman v. Widman*, 348 S.C. 97, 119, 557

---

**2.** We additionally note, Cannon's counsel conceded the circuit court had personal jurisdiction over Cannon at oral arguments.

S.E.2d 693, 705 (Ct.App.2001). "A willful act is one ... done voluntarily and intentionally with the specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done; that is to say, with bad purpose either to disobey or disregard the law." *Miller*, 375 S.C. at 454, 652 S.E.2d at 759–60 (internal quotations and citations omitted).

 "In addition, courts have the inherent power to punish for offenses that are calculated to obstruct, degrade, and undermine the administration of justice." *Id.* at 455, 652 S.E.2d at 760. "[J]udges have the authority to [*sua sponte* ] use contempt proceedings to preserve the authority and dignity of their courts." *McEachern v. Black,* 329 S.C. 642, 649, 496 S.E.2d 659, 662–63 (Ct.App.1998).

 "Once the moving party has made out a prima facie case [for contempt], the burden then shifts to the respondent to establish his ... defense and inability to comply with the order." *Miller,* 375 S.C. at 454, 652 S.E.2d at 760. If, through no fault of his own, the contemnor is unable to obey a court order, the contemnor cannot be held in contempt. *Id.*

 There is a distinction between constructive and direct contempt. *Floyd,* 365 S.C. at 75, 615 S.E.2d at 475. "Constructive contempt is contempt that occurs outside the presence of the court." *Id.* "In contrast, direct contempt involves contemptuous conduct occurring in the presence of the court." *Id.*

 Further, "[c]ontempt can be either civil or criminal." *Id.* "The distinction between civil and criminal contempt is crucial because criminal contempt triggers additional constitutional safeguards." *Ex parte Jackson,* 381 S.C. 253, 259, 672 S.E.2d 585, 588 (Ct.App.2009). "Intent for purposes of criminal contempt is subjective, not objective, and must necessarily be ascertained from all the acts, words, and circumstances surrounding the occurrence." *State v. Passmore,* 363 S.C. 568, 571–72, 611 S.E.2d 273, 275 (Ct.App.2005). Additionally, civil contempt must be proven by clear and convincing evidence, while criminal contempt must be proven beyond a reasonable doubt. *Poston v. Poston,* 331 S.C. 106, 113, 502 S.E.2d 86, 89 (1998).

In determining whether the contempt is civil or criminal, the major factor to consider "is the purpose for which the power is exercised, including the nature of the relief and the purpose for which the sentence is imposed." *Id.* at 111, 502 S.E.2d at 88. "The purpose of civil contempt is to coerce the defendant to do the thing required by the order for the benefit of the complainant[,]" while "[t]he primary purposes of criminal contempt are to preserve the court's authority and to punish for disobedience of its orders." *Id.* If it is for civil contempt, the punishment is remedial and for the benefit of the complainant. *Id.* If it is for criminal contempt, the sentence is punitive and meant to vindicate the authority of the court. *Id.*

"[A]n unconditional penalty is considered criminal contempt because it is solely and exclusively punitive in nature." *Ex parte Jackson*, 381 S.C. at 258–59, 672 S.E.2d at 587. When sanctions are conditioned on compliance with the court's order, the contempt is civil in nature. *Poston*, 331 S.C. at 112, 502 S.E.2d at 89.

> The conditional nature of the punishment renders the relief civil in nature because the contemnor can end the sentence and discharge himself at any moment by doing what he had previously refused to do. If the relief provided is a sentence of imprisonment, it is remedial if the defendant stands committed unless and until he performs the affirmative act required by the court's order. Those who are imprisoned until they obey the order, carry the keys of their prison in their own pockets. If the sanction is a fine, it is remedial and civil if paid to the complainant even though the contemnor has no opportunity to purge himself of the fine or if the contemnor can avoid the fine by complying with the court's order.

*Id.* at 112–13, 502 S.E.2d at 89.

In the present case, Cannon was found to be in willful contempt of court for failure to pay $373,000 to the Estate as ordered by the circuit court at the September 24, 2007 hearing, and for failure to relinquish all authority in relation to the Estate, the Trust, and all other related entities as ordered by the circuit court on August 10, 2007. The circuit court ordered Cannon to six months imprisonment but allowed him to

"purge himself of this confinement by the payment of the . . . $373,000, the payment into [the circuit court] of $50,000.00 to be applied towards the payment of attorneys' fees as incurred by the various parties, and the payment of a fine of $10,000.00." Although Cannon was held in contempt in part for disobeying the circuit court's order to relinquish all authority associated with the Estate and the Trust, the purpose of the contempt order was to coerce Cannon to comply with the circuit court's order to pay $373,000 to the Estate. Additionally, Cannon was not subject to an unconditional, fixed term of imprisonment; he could avoid confinement by complying with the circuit court's order. Thus, we find the contempt to be civil in nature. *See Curlee v. Howle*, 277 S.C. 377, 386, 287 S.E.2d 915, 920 (1982) (stating a purpose of civil contempt is to coerce the defendant to comply with a court order); *Miller*, 375 S.C. at 462, 652 S.E.2d at 764 (finding the contempt proceeding was civil in nature because the term of imprisonment was not unconditional or fixed and the contemnor could obtain release by complying with the court's directive).

■■■ Finding civil contempt, the record must contain clear and convincing evidence of Cannon's contemptuous behavior. *See Durlach v. Durlach*, 359 S.C. 64, 70–71, 596 S.E.2d 908, 912 (2004) (stating an appellate court should reverse a decision regarding contempt if it is without evidentiary support or the circuit court abused its discretion, and clear and convincing evidence must support a finding of civil contempt). Cannon provided the circuit court with clear and convincing evidence, through his testimony and conduct, upon which to base its decision, including admitting to not complying with either circuit court order. Cannon went so far as to testify that he knowingly and willfully disregarded an order of the circuit court.

■■■ As for Cannon's failure to pay the Estate $373,000 as ordered by the circuit court on October 2, 2007, Cannon readily admitted he did not pay the fee. Cannon, however, argued he did not have the ability to pay the fee and, therefore, could not comply with the court order. The circuit court did not find this testimony to be credible. This finding was in light of the evidence of Cannon's earnings from the previous seven years, the purchase of land in Honduras, and

his entry into a contract for the construction of a home on that land.

According to Cannon's federal income tax returns,[3] Cannon's adjusted gross income from 2000 to 2006 was as follows: $1,397,000; $959,851; $169,334; $749,639; negative $514,509;[4] $348,831; and $1,058,790, respectively. Additionally, Cannon claimed $1,529,000 in deductions from his business income in 2003. Further, $1,323,972 in income was reported on a Schedule C form attached to Cannon's 1999 tax return. When asked by the circuit court to provide a current financial statement, Cannon provided one showing his current net value to be negative $311,592.38.

Cannon also testified as to the land and the contract to build a home he and his wife purchased in Honduras around August 16, 2007. This purchase took place less than one week after the hearing where the circuit court ordered Cannon to pay the Estate $350,000 of the $900,000 that had been misappropriated, where the circuit court raised serious questions about those remaining funds, and where the circuit court made it clear the payment of $350,000 was only a partial payment. Cannon testified he and his wife planned to retire in Honduras, which was the reason for building in that location. Cannon and his wife formed a corporation in Honduras called Bay Island Hermitage in order to buy property in the country; Cannon and his wife equally own 99% of the corporation while a Honduran attorney owns 1%, which is required by Honduran law. Cannon stated he paid $223,000 for the lot in Honduras and then $866,000 for a "turn-key contract" for the construction and furnishing of a home. Cannon stated he paid the

---

3. Due to IRS and SLED investigations involving Cannon's income, Cannon continually invoked his Fifth Amendment privilege on questions concerning his income. The circuit court was, therefore, only able to use the numbers listed on his federal income tax returns, with no explanations or discussions, to determine Cannon's income from 2000–2006.

4. The circuit court's December 18, 2007 order incorrectly stated Cannon's adjusted gross income for 2004 was $514,509. Cannon's 2004 federal income tax return showed Cannon had a business income of $203,226 and took deductions of $721,601. Cannon's adjusted gross income for 2004 was negative $514,509. During this testimony, Cannon again invoked his Fifth Amendment privilege, giving the circuit court no explanation of the significant deductions taken in 2004.

entire cost up front in cash, and the property is unencumbered. He also testified, however, that the funds used for these purchases belonged to his wife.

Based on the record, we find there was clear and convincing evidence Cannon was in contempt of the October 2, 2007 court order requiring him to pay the Estate $373,000. Remaining mindful the circuit court was in a better position to judge the credibility of the witnesses, we also find Cannon failed to carry his burden of proving he was without fault in not being able to satisfy the circuit court's order. *See Reed v. Ozmint,* 374 S.C. 19, 24, 647 S.E.2d 209, 211 (2007) (deferring to the circuit court because the judge, who saw and heard the witnesses, was in a better position to evaluate credibility and assign comparative weight to their testimony); *Thornton v. Thornton,* 328 S.C. 96, 112, 492 S.E.2d 86, 94–95 (1997) (stating that in response to the husband's argument he could not pay child support and should, therefore, not be held in contempt for failure to pay, our Supreme Court looked at factors which included: "(1) Husband's ownership of valuable property, as evidenced by his own financial declaration; [and] (2) Husband's extensive history of lying to virtually everyone about his assets or hiding those assets"); *see generally* 17 Am. Jur. 2d *Contempt* § 141 (2008) ("The defense of inability to comply with a court order is not available where the contemnor has voluntarily created the incapacity or, said another way, when the inability to comply is self-induced."). Thus, the circuit court did not abuse its discretion in holding Cannon in contempt.

 As for Cannon's failure to relinquish all authority relating to the Estate, the Trust, and the related entities by participating in the amendment of some of the Corporation's tax returns, Cannon unequivocally stated that despite knowing the circuit court's order prohibited him from doing so, he disregarded the order and amended the tax returns with no authority. At the hearing to determine the willfulness of Cannon's failure to account and whether he had paid specified sums to the Estate, Cannon admitted he amended corporate tax returns for the Corporation, which were filed September 26 and October 16, 2007, after his resignation as personal representative and trustee on August 10, 2007. When questioned as to whether he was aware of the circuit court's order

relinquishing his duties effective upon his resignation, he stated he had notice of the order and understood he did not have the authority to take the actions he took. Cannon informed the circuit court "[he] knew that probably [he] would have to take the heat for [amending the tax returns without authority], but [he] would rather take the heat for doing it than not doing it."

The record contains clear and convincing evidence that Cannon was in contempt of the circuit court's August 10, 2007 order, and again, Cannon failed to carry his burden of proving a defense for his actions. Consequently, there was no abuse of discretion in the circuit court's finding of contempt.

▬ Finding the circuit court was correct to hold Cannon in civil contempt, we must also review the sanction imposed by the circuit court. Cannon was sentenced to six months imprisonment with the ability to purge his confinement by paying specified fees and fines. We find no abuse of discretion in the circuit court's imposition of the six-month prison sentence or in handing Cannon the keys to his prison by allowing him to purge the confinement upon the payment of $373,000 as previously ordered by the court. We do, however, take issue with the $50,000 award towards attorneys' fees, and we find the $10,000 fine to be an abuse of discretion.

▬ Regardless of whether a six-month imprisonment sentence is imposed for civil or criminal contempt, a contemnor has no right to a jury trial for an imprisonment sentence of six months or less. See *Curlee*, 277 S.C. at 385, 287 S.E.2d at 919 ("If [the contempt] was civil, [the contemnor's] sentence of one year without a right to jury trial is proper. If it was criminal, [the contemnor] had a constitutional right to a jury trial before a sentence of *more than six months* could be imposed.") (emphasis added); *Passmore*, 363 S.C. at 572, 611 S.E.2d at 275 ("Currently, these provisions [of the Constitution] require a contemnor to be allowed a jury trial when facing a serious sentence-i.e., one of *greater than six months in prison*.") (emphasis added). Cannon was, therefore, not deprived of any due process rights with the imposition of a six-

month imprisonment sentence, especially in this civil contempt proceeding.[5]

Furthermore, Cannon's sentence was made conditional on his compliance with the circuit court's order. As we have already stated, looking at the evidence in the record and deferring to the circuit court on matters of credibility, we find Cannon either had the ability to pay the $373,000 to purge his confinement or was unable to pay this fee as a direct consequence of his own actions and behavior from the start of the proceedings. *See Miller*, 375 S.C. at 454, 652 S.E.2d at 760 (stating contemnor must be without fault in his inability to comply with the court order); *cf. Thornton*, 328 S.C. at 104, 492 S.E.2d at 90–91 (stating the family court found husband had the ability to pay arrearages of $21,000 and was, therefore, in contempt for failure to pay, despite his claim that he lacked the means to pay because husband had received approximately $350,000 from a recent legal settlement, he had a "substantial" lifestyle, and he owned several properties, including a lien-free Georgetown office valued at $250,000 and a one-half interest in a Colorado vacation home valued at $600,000).

"Courts, by exercising their contempt power, can award [attorneys'] fees under a compensatory contempt theory." *Cheap–O's Truck Stop, Inc. v. Cloyd*, 350 S.C. 596, 609, 567 S.E.2d 514, 520 (Ct.App.2002) (citation omitted). The award of attorneys' fees is not a punishment but an indemnification to the party bringing the action. *Miller*, 375 S.C. at 463, 652 S.E.2d at 764–65. Because the record lacks sufficient evidence from which the circuit court could determine the appropriate amount of attorneys' fees required for reimbursement, we find the $50,000 award for attorneys' fees to be an abuse of discretion. We reverse and remand the issue of attorneys' fees to the circuit court for findings of fact as to the proper amount of attorneys' fees required for indemnification.

---

5. Additionally, at the November 2007 contempt hearing, Cannon's counsel highlighted the right to a jury trial when a criminal contempt sentence exceeds six months. The circuit court responded that Cannon's sentence would not exceed six months. Moreover, counsel did not request any rights associated with a criminal proceeding even if we were to construe the fine as a criminal sanction.

Courts may also impose fines on a party held in contempt. *Cheap–O's Truck Stop, Inc.,* 350 S.C. at 609, 567 S.E.2d at 520. "If the sanction is a fine, it is punitive when it is paid to the court." *Poston,* 331 S.C. at 112, 502 S.E.2d at 89. A fine may also be "remedial and civil if paid to the complainant even though the contemnor has no opportunity to purge himself of the fine. . . ." *Miller,* 375 S.C. at 457, 652 S.E.2d at 761 (citations omitted). However, "[a]ny component of a sanction must be directly related to the contemptuous conduct and the loss incurred by the offended party." *Cheap–O's Truck Stop, Inc.,* 350 S.C. at 609, 567 S.E.2d at 520.

The circuit court imposed an additional $10,000 fine on Cannon. The order did not state the purpose of the fine. If the fine was imposed for compensation purposes, it was improper because the record contains no reasonable relationship between Cannon's contemptuous conduct and the imposition of the $10,000 fine. Consequently, we reverse the $10,000 fine imposed. Cf. id. (reversing the circuit court's improper imposition of a fine on the contemnor).

Cannon also argues the circuit court erred in (1) finding Cannon in civil contempt for conduct that took place after August 10, 2007, and (2) imposing a purge remedy based upon the assets or financial strength of Cannon's wife. We find these arguments abandoned on appeal due to Cannon's failure to cite any legal authority in support of either argument. *See Mulherin–Howell v. Cobb,* 362 S.C. 588, 600, 608 S.E.2d 587, 593–94 (Ct.App.2005) (stating an issue is deemed abandoned on appeal when no legal authority is cited to support the argument).

Finally, Cannon argues the circuit court erred in requiring him to pay $373,000 into the circuit court regarding a disputed civil claim even though Cannon had not been served with a summons and complaint affording him an opportunity to be heard and to engage in discovery, thereby placing him in the position of being estopped with regard to any claim that may be brought against him for the funds that are at issue. We disagree.

Cannon begins his argument with the premise that the circuit court held him in both civil and criminal contempt. As

previously discussed, we find the present contempt proceedings to be civil in nature, meaning the additional constitutional safeguards required in criminal contempt proceedings were not triggered. *See Ex parte Jackson,* 381 S.C. at 259, 672 S.E.2d at 588 ("The distinction between civil and criminal contempt is crucial because criminal contempt triggers additional constitutional safeguards."). Further, even if the contempt proceedings were criminal in nature, Cannon was not entitled to a jury trial on the matter because his imprisonment sentence did not exceed six months. *See Curlee,* 277 S.C. at 385, 287 S.E.2d at 919 ("If [the contempt] was civil, [the contemnor's] sentence of one year without a right to jury trial is proper. If it was criminal, [the contemnor] had a constitutional right to a jury trial before a sentence of *more than six months* could be imposed.") (emphasis added); *Rhoad v. State,* 372 S.C. 100, 107, 641 S.E.2d 35, 38 (Ct.App.2007) ("[A] contemnor may be tried without a jury under certain circumstances, as long as the sentence imposed is no longer than six months."); *Passmore,* 363 S.C. at 572, 611 S.E.2d at 275 ("Currently, these provisions [of the Constitution] require a contemnor to be allowed a jury trial when facing a serious sentence-i.e., one of *greater than six months in prison.*") (emphasis added).

Cannon continues his argument by stating the circuit court sanctioned him without first determining whether the sanction was appropriate. An issue must be raised to and ruled upon by the circuit court to be preserved for appellate review. *Wilder Corp. v. Wilke,* 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998). Cannon failed to raise this argument to the circuit court despite his many opportunities to do so. Thus, we will not address this argument.

## CONCLUSION

Based on the foregoing, the circuit court's order is

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**

GEATHERS, J., and CURETON, A.J., concur.