SPARTANBURG BUDDHIST CENTER OF
SOUTH CAROLINA, Respondent,

v.

Ron ORK and Luke Dong, Appellants.

Ron Ork and Luke Dong, Third Party Plaintiffs,

v.

Chivin Sun, Robert Pek, Sakhan Sok, Sambo Khieav, Sophay
Pres, and Tommy Ong, Third Party Defendants.

Appellate Case No. 2015–000366
Opinion No. 5427

Court of Appeals of South Carolina.

Heard May 9, 2016
Filed July 13, 2016

602

Thomas Alexander Belenchia, Larry Eugene Gregg, II, and Thomas Camden Shealy, all of A Business Law Firm, of Spartanburg, for Appellants.

Scott Franklin Talley and Shannon Metz Phillips, both of Talley Law Firm, P.A., of Spartanburg, for Respondent.

MCDONALD, J.:

Appellants Ron Ork and Luke Dong appeal several circuit court orders, arguing the court erred in (1) issuing a temporary injunction on April 21, 2014; (2) issuing a second tempo-

rary injunction on May 16, 2014; (3) holding Ork in contempt of the April 21 injunction; (4) holding Ork in contempt of the May 16 injunction; and (5) awarding Respondent Spartanburg Buddhist Center (the Center) $3,500 in attorney's fees. We reverse.

## FACTS

The Center is the corporate entity of a Buddhist temple located in Spartanburg. This case stems from a disputed election that occurred at the temple on April 20, 2014, and its relation to the construction of a new building. At the April 20 election, a new president and five new board members were chosen. Two days before the election, the temple's head monk, Ron Ork, withdrew $61,400 from the Center's bank account.[1] The Center filed its initial complaint against Ork on April 21, 2014, along with a motion for a temporary injunction.

That same day, the circuit court issued an order granting the motion for a temporary injunction (the first injunction), stating all officers and board members should remain as they were before the April 20 election, pending resolution of the matter. Additionally, Ork was ordered to redeposit any funds taken from the Center's bank account within twenty-four hours.

On April 25, Ork moved to dissolve the first injunction and the circuit court held a hearing. On May 2, the circuit court's clerk emailed the parties' attorneys (the May 2 email) stating the court believed the disputed funds should be placed into a new joint account with attorneys from each party serving as signatories. Additionally, the email purported to enjoin both parties from encumbering the Center's assets or entering into contracts on the Center's behalf without the court's permission.

On May 16, the circuit court filed an order granting a temporary injunction (the second injunction), denying Ork's motion to dissolve and superseding the first injunction. The order required Ork to deposit the disputed funds into a new account for which the attorneys were the only signatories. The funds could only be used "to pay obligations of [the Center] on

---

1. We decline to discuss Luke Dong's role in the case because the circuit court did not hold him in contempt.

which the parties agree and for which the parties authorize their representative attorneys to sign." The order enjoined the parties from encumbering the Center's assets or entering into contracts on the Center's behalf without the court's permission. Finally, the order stated no bond was required. Ork filed a motion to reconsider, arguing the first injunction was issued without bond and without notice and the second injunction was issued without bond. However, the motion was denied.

When the parties met on June 27 to open the new account, only $1634.70 of the $61,400 remained. The record reveals three checks were written to a construction company after the first injunction was issued. The first check was written on April 29 in the amount of $20,000, the second on May 5 in the amount of $16,400, and the third on May 9 in the amount of $32,000. Subsequently, the circuit court issued an order and rule to show cause why Ork should not be held in contempt.

At the contempt hearing, Ork reasserted that the first injunction was invalid because it was issued without notice or bond and the second injunction was invalid because it, too, was issued without bond. Additionally, Ork claimed the injunctions did not set forth with specificity the acts intended to be restrained. The circuit court found both injunctions were valid and enforceable.

The circuit court's resulting order held Ork in civil contempt for issuing the April 29 check less than ten days after the first injunction. The court also held Ork in contempt for issuing the May 7 and May 9 checks because the first injunction remained in effect on those dates. Additionally, the court found that even if the first injunction had expired, Ork was still in contempt for violating the directives of the May 2 email and the second injunction. The court awarded the Center $3,500 in attorney's fees and sentenced Ork to jail for five months with the opportunity to purge his contempt by depositing $59,765.35 into the Center's new bank account within ninety days. Ork's motion to reconsider was denied.

## LAW/ANALYSIS

### I. Willful Contempt

"A party who refuses to abide by an injunction entered by the court would of course be in contempt of court and subject to sanctions ...." *Grosshuesch v. Cramer*, 377

S.C. 12, 29–30, 659 S.E.2d 112, 121 (2008). "On appeal, this Court should reverse the contempt decision only if it is without evidentiary support or the circuit court abused its discretion." *Ex parte Cannon*, 385 S.C. 643, 660, 685 S.E.2d 814, 823 (Ct. App. 2009).

"Contempt results from the willful disobedience of a court order and before a person may be held in contempt, the record must be clear and specific as to acts or conduct upon which the contempt is based." *Ex parte Kent*, 379 S.C. 633, 637, 666 S.E.2d 921, 923 (Ct. App. 2008). "A willful act is an act 'done voluntarily and intentionally with the specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done; that is to say with bad purpose either to disobey or disregard the law.' " *Id.* (quoting *State v. Bevilacqua*, 316 S.C. 122, 129, 447 S.E.2d 213, 217 (Ct. App. 1994)). "Once the moving party has made out a prima facie case [for contempt], the burden then shifts to the respondent to establish his ... defense and inability to comply with the order." *Ex parte Cannon*, 385 S.C. at 661, 685 S.E.2d at 824 (quoting *Miller v. Miller*, 375 S.C. 443, 454, 652 S.E.2d 754, 760 (Ct. App. 2007)).

Here, the circuit court found Ork in contempt because he wrote checks removing funds from the Center's account after the first injunction required him to redeposit the disputed funds back into the Center's account. The Center argues Ork acted willfully by changing the account's signatories and then spending the disputed funds. Conversely, Ork asserts he complied with the first injunction's lone command to redeposit the disputed funds back into the Center's account. The order itself, which the circuit court acknowledged was "in-artfully drawn," only required Ork to "deposit any funds withdrawn from [the Center's] bank account ... back into [the Center's] bank account within twenty-four (24) hours." The order did not specifically reference safeguarding the money or restrict how the money could be spent. Accordingly, we believe it was error for the circuit court to place Ork in contempt for spending money from the Center's account when the first injunction failed to specify such restrictions and those restrictions were only implied.[2] *See Cty. of Greenville v. Mann*, 347

---

2. To the extent the Center argues an April 25 chambers conference clarified that the disputed funds were not to be spent by either party

S.C. 427, 435, 556 S.E.2d 383, 387 (2001) ("One may not be convicted of contempt for violating a court order which fails to tell him in definite terms what he must do."); *id.* at 435, 556 S.E.2d at 387–88 (holding an appellant could not be held in contempt for failing to comply with an ambiguous and contradictory order); *Phillips v. Phillips*, 288 S.C. 185, 188, 341 S.E.2d 132, 133 (1986) ("A court need go no further in reviewing the evidence in a contempt action when there is uncertainty in the commands of an order . . . . 'The language of the commands must be clear and certain rather than implied.'" (quoting *Welchel v. Boyter*, 260 S.C. 418, 421, 196 S.E.2d 496, 498 (1973))).

Unlike the first injunction, the second injunction specifically provided that the funds could only be used to pay the Center's obligations "on which the parties agree and for which the parties authorize their representative attorneys to sign." However, the three checks Ork wrote from the Center's account were all issued *before* the second injunction was filed on May 16. *See* Rule 58, SCRCP (stating a judgment is not effective until entered in the record). Therefore, Ork cannot be held in contempt because he could not willfully violate the provisions of an order that did not yet exist. Additionally, during oral argument, this court asked the Center's counsel when Ork had actual knowledge of the second injunction, and counsel cited a statement in Ork's brief indicating Ork did not receive the second injunction until May 21.

■ Finally, we believe it is clear the May 2 email did not have the effect of a filed order. Although the circuit court correctly noted our judiciary's increasing reliance on new technology, our rules concerning final orders have not changed.[3] *See* Rule 58, SCRCP (stating a judgment is not

---

during the litigation, we note the substance of that meeting was not placed on the record. *See State v. Gaskins*, 263 S.C. 343, 346, 210 S.E.2d 590, 591 (1974) ("In this State we follow the rule that the acts of a court of record are known by its records alone and cannot be established by parol testimony.").

3. Assuming, arguendo, that the May 2 email's instructions were mandatory, Ork still would not have been in contempt because he had no knowledge of the email's contents. Notably, Ork's counsel stated during oral argument that after he received the email, he only told Ork that the court ruled against them on their motion to dissolve. Ork's counsel

effective until entered in the record); *Ford v. State Ethics Comm'n*, 344 S.C. 642, 646, 545 S.E.2d 821, 823 (2001) ("The written order is the trial judge's final order and as such constitutes the final judgment of the court. The final written order contains the binding instructions which are to be followed by the parties."); *see also Serowski v. Serowski*, 381 S.C. 306, 315, 672 S.E.2d 589, 594 (Ct. App. 2009) (holding a court's memorandum instructing counsel how to prepare a proposed order was not the final written order and the court retained discretion to change or amend the final order). Accordingly, we reverse the circuit court's order holding Ork in contempt.[4]

## II. Deficiencies in the Injunctions

■ "Temporary injunctive relief rests within the sound discretion of the trial judge and will not be overturned unless the order is clearly erroneous." *Atwood Agency v. Black*, 374 S.C. 68, 72, 646 S.E.2d 882, 884 (2007).

Temporary injunctions are governed by the provisions of Rule 65, SCRCP. Rule 65(a) provides, "No temporary injunction shall be issued without notice to the adverse party." Rule 65(c) states, "[N]o restraining order or temporary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Rule 65(d) provides,

> Every order granting an injunction ... *shall* set forth the reasons for its issuance; shall be specific in terms; *shall* describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action ....

insisted he told Ork to wait until they received a final order before they reviewed the matter further.

4. We sympathize with the circuit court's efforts to preserve the status quo. Although we believe Appellants (and their counsel) understood the court's intent and instructions, we recognize that "before a person may be held in contempt, the record must be clear and specific as to acts or conduct upon which the contempt is based." *Kent*, 379 S.C. at 637, 666 S.E.2d at 923 (finding evidence in the record insufficient to establish Kent knew that he willfully disobeyed a court order).

(emphasis added). Ordinarily, use of the word "shall" means an action is mandatory. *S.C. Dep't of Highways & Pub. Transp. v. Dickinson*, 288 S.C. 189, 191, 341 S.E.2d 134, 135 (1986).

We find the first injunction violated certain mandatory provisions of Rule 65. First, the injunction was issued without notice in violation of Rule 65(a), given that Ork did not accept service of the motion for injunctive relief and the resulting order until three days after the order was issued. Second, the injunction failed to require the Center to provide security in violation of Rule 65(c). *See AJG Holdings, LLC v. Dunn*, 382 S.C. 43, 50, 674 S.E.2d 505, 508 (Ct. App. 2009) (remanding a case when the circuit court failed to order a party to post a bond before issuing a temporary injunction); *Atwood*, 374 S.C. at 73, 646 S.E.2d at 884 (stating even a "nominal security bond does not satisfy Rule 65(c) because it erroneously assumes the injunction is proper instead of providing an amount sufficient to protect appellants in the event the injunction is ultimately deemed improper"); 12 S.C. Jur. *Equity* § 19 (1992) ("Rule 65(c) ... requires that security be posted before the court may issue either a restraining order or temporary injunction.").

Although the first injunction was captioned "Order Granting Temporary Injunction," the Center argues it "operated more like a temporary restraining order pending an order from the [t]emporary [i]njunction hearing held April 25, 2014." However, even if the injunction is construed as a temporary restraining order (TRO), the Center was still required to give security under Rule 65(c). Additionally, Rule 65(b) requires that a TRO issued without notice "shall define the injury and state why it is irreparable and why the order was granted without notice." Here, the first injunction stated the Center would "suffer irreparable harm if the injunction is not granted" but did not elaborate on the injury itself or why the order was granted without notice. Accordingly, we find the circuit court erred in issuing the April 21 order without including necessary information, regardless of whether it is considered a temporary injunction or a TRO.

Likewise, we find the circuit court erred in issuing the May 16 order without requiring security. The second injunction

stated "no bond shall be required," and based on the May 2 email, it appears the court's reasoning was that no bond was necessary "due to the security created by the dual signatory requirement" on the new bank account. However, as noted earlier, our appellate courts have interpreted Rule 65(c) strictly. *See Atwood*, 374 S.C. at 73, 646 S.E.2d at 884 (stating that even a nominal bond of $250 was insufficient to satisfy Rule 65(c)). Therefore, it was error for the circuit court to issue the second injunction without satisfying the requirements of Rule 65(c).

### III. Attorney's Fees and Costs

Given our decision to reverse the circuit court's findings on contempt, we also reverse the award of attorney's fees. *See Eaddy v. Oliver*, 345 S.C. 39, 44, 545 S.E.2d 830, 833 (Ct. App. 2001) (reversing issue of attorney's fees when the appellate court reversed the lower court's finding on contempt).

### CONCLUSION

Based on the foregoing, we hold the circuit court abused its discretion when it held Ork in contempt of the April 21 and May 16 orders granting injunctive relief. Thus, we reverse the contempt findings as well as the award of attorney's fees.

**REVERSED.**

LOCKEMY, C.J., and WILLIAMS, J., concur.